ELí GALARZA RIVERA, demandante y peticionario, *v.* MARIANITA MERCARDO PAGÁN, demandada y recurrida.

*Número:* CE-93-611 *Resuelto:* 19 de diciembre de 1995

622

*Manuel A. Coss Martínez,* abogado de la parte peticionaria; *Neddie Feliciano Jiménez,* abogada de la parte recurrida.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

Hoy nos toca resolver el alcance de la limitación al embargo de ingresos que establece la sec. 1673 de la ley federal que protege a los consumidores, el *Consumer Credit Protection Act* (en adelante C.C.P.A.), 15 U.S.C., y el Art. 24(6) de la Ley Especial de Sustento de Menores (en adelante Ley Especial), Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. sec. 523(6). Además, debemos determinar cómo se ha de aplicar el Art. 24 de la Ley Especial, 8 L.P.R.A. sec. 523, en los casos en que exista más de una orden de retención sobre un alimentante y que la suma de éstas exceda los límites dispuestos por la mencionada sec. 1673.

I

El Sr. Elí Galarza Rivera y la Sra. Marianita Mercado Pagán son los padres de la niña Verónica Galarza Mercado, quien nació el 2 de octubre de 1987.

El señor Galarza Rivera presentó una demanda para solicitar la regulación de las relaciones paterno-filiales con su hija, la patria potestad compartida y la asignación de una pensión alimentaria justa y razonable. La señora Mercado Pagán contestó la demanda y reconvino. El tribunal concedió una pensión alimentaria provisional de cuatrocientos dólares ($400).

Luego de celebrar la vista en su fondo, el foro de instancia determinó que el demandante, señor Galarza Rivera, era ingeniero y que recibía un ingreso bruto de cuatro mil trescientos ochenta y dos dólares ($4,382) mensuales. De esta suma, se le deducían ochocientos setenta y dos dólares ($872) mensuales por concepto de contribuciones sobre ingresos, retiro, seguro social y seguro médico de dos (2) hijos de un matrimonio disuelto por divorcio. Además, tenía que pagar una pensión alimentaria a estos dos (2) hijos. En cuanto a la demandada Mercado Pagán, determinó que era contadora pública autorizada, pero que al momento se encontraba desempleada. Sus ingresos se habían reducido a la cantidad de cuatrocientos ochenta dólares ($480), provenientes del cobro de seguro por desempleo.

Conforme con lo anterior, el 8 de octubre de 1991 dictó una sentencia que le imponía al señor Galarza Rivera una pensión alimentaria a favor de la menor Verónica Galarza Mercado de quinientos cuarenta dólares ($540) mensuales, desde el 5 de noviembre de 1990 hasta el 12 de abril de 1991, y de seiscientos cincuenta y nueve dólares ($659) mensuales a partir de 13 de abril de 1991. Dichas sumas se computaron según lo establecen las Guías para Determinar y Modificar Pensiones Alimentarias preparadas por el Departamento de Servicios Sociales. Con respecto a las relaciones paterno-filiales, el tribunal estableció que éstas se llevarían a cabo los sábados y domingos. No se pronunció en cuanto a la patria potestad compartida.

El 15 de octubre de 1992, luego de que la señora Mercado Pagán presentara una moción de desacato por incum-

plimiento de pago de la pensión alimentaria, el señor Galarza Rivera, mediante una declaración jurada, solicitó voluntariamente que se le retuviera de su salario mensual la cantidad de cuatrocientos dólares ($400) por concepto de pensión alimentaria. Así las cosas, el 15 de septiembre de 1993, el tribunal ordenó que se le retuviese al señor Galarza Rivera de su salario la suma de cuatrocientos dólares ($400) para el pago de la pensión alimentaria más doscientos cincuenta dólares ($250) para abonar a la deuda en que incurrió por atrasos al pago de ésta.

Luego de una serie de trámites procesales, el señor Galarza Rivera acudió ante nos y señaló, en síntesis, que

[e]rró el Tribunal Superior al no considerar las pensiones alimenta[rias] anteriores impuestas por sentencia como deducciones mandatorias por ley, de acuerdo a la definición de ingreso neto, que establece la Ley Especial de Sustento de Menores (L.E.S.M.), Ley Número 5 de 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. Sec. 501 *et seq.*[;] ... al asignar una pensión alimentaria, que al sumarse a las pensiones alimenta[rias] anteriores, impuestas mediante sentencia, exceden el [50%]([1]) del salario neto del empleado, cuya única fuente de ingreso es su salario como empleado de la empresa privada[;] ... al no imputar salario a la madre del alimentista cuando ésta es [una] Contador[a] Públic[a] Autorizad[a], estaba trabajando cuando empezó el pleito, tiene negocio propio y realizaba trabajos por igualas [; y] ... al no resolver la sentencia en todas sus partes y pretender que la misma tenga los atributos de una sentencia final y firme.

Decidimos revisar y expedimos el recurso.

## II

El señor Galarza Rivera nos plantea que las pensiones establecidas anteriormente por un tribunal son deduccio-

---

([1]) El recurrente señor Galarza Rivera, equivocadamente, hace mención al límite de 60% que establece la sec. 1673(b)(2)(B) del *Consumer Credit Protection Act*, 15 U.S.C., en vez del límite de 50% que establece la sec. 1673(b)(2)(A) de dicha ley, 15 U.S.C., que es la aplicable, ya que el recurrente tenía dependientes previos.

nes mandatorias para propósitos del cómputo de la pensión alimentaria que ha de fijarse. Según el recurrente, esta interpretación es cónsona tanto con el propósito de la ley federal para la implantación de pensiones alimentarias para menores —*Child Enforcement Support Act*, 42 U.S.C. sec. 667— como con las diversas interpretaciones que los estados le han impartido a las guías que han adoptado para determinar las pensiones.([2]) No le asiste la razón. Veamos.

■ El Art. 2(9) de la Ley Especial, 8 L.P.R.A. sec. 501(9), define lo que se considerará como ingreso neto para propósitos de la fijación de una pensión alimentaria.

"Ingreso Neto" —[significa] aquellos ingresos disponibles al alimentante, luego de las deducciones por concepto de contribuciones sobre ingresos, seguro social y otras requeridas mandatoriamente por ley. Se tomarán en consideración, además, a los efectos de la determinación de ingreso neto, las deducciones por concepto de planes de retiro, asociaciones y uniones y federaciones voluntarias, así como los descuentos o pagos por concepto de primas de pólizas de seguros de vida contra accidentes o de servicios de salud, cuando el alimentista sea beneficiario de éstos. ... 8 L.P.R.A. sec. 501(9).

En las Guías para Determinar y Modificar Pensiones Alimenticias en Puerto Rico, Reglamento Núm. 4070 de 8 de diciembre de 1989, Departamento de Servicios Sociales (en adelante Guías Mandatorias), se adoptó la definición

_____

([2]) En 1984, el Congreso de Estados Unidos aprobó varias enmiendas al Título IV-D de la Ley de Seguridad Social Federal de 1935. Esta pieza legislativa se conoce como el *Child Support Enforcement Ammendments of 1984*, Pub. L. No. 98-378, 1984 U.S. Code Cong. & Adm. News, pág. 2397. Las enmiendas proveyeron incentivos a los estados para que éstos reforzasen y adoptasen métodos más efectivos para la determinación, recaudación y distribución de las pensiones alimentarias. Como condición para que los estados pudieran participar de los fondos federales asignados, éstos deberían adoptar unas guías para establecer las pensiones alimentarias. 42 U.S.C. sec. 667.

El 30 de diciembre de 1986 se aprobó en Puerto Rico la Ley Especial de Sustento de Menores (en adelante Ley Especial) con el propósito de que pudiéramos participar de los fondos federales asignados para estos efectos. Para hacer viable dicha ley, el Departamento de Servicios Sociales aprobó, el 8 de diciembre de 1989, las Guías para Determinar y Modificar Pensiones Alimenticias en Puerto Rico, Reglamento Núm. 4070.

de "ingreso neto" contenida en la Ley Especial. Éstas, además, específicamente disponen que "[s]e entiende por deducciones mandatorias aquellas deducciones del salario bruto de una persona que por ley se requieren *en el desempeño de su trabajo*". (Énfasis suplido.) Sec. 2 de las Guías Mandatorias, pág. 4.

■ Ni en la Ley Especial ni en las Guías Mandatorias se establece que las pensiones alimentarias anteriores impuestas por sentencia se considerarán deducciones mandatorias por ley para determinar el ingreso neto.

En apoyo a su argumento sobre la mandatoriedad de la deducción de las pensiones previamente impuestas, el peticionario señala que el Congreso de Estados Unidos le requirió a los estados y a Puerto Rico implantar unas guías de aplicación uniforme para la determinación de pensiones alimentarias. Alegó que ha examinado los estatutos de varios estados y ha encontrado que éstos deducen, del ingreso bruto para determinar el ingreso neto, las pensiones asignadas por órdenes judiciales. De esto concluye que en Puerto Rico tiene que hacerse lo mismo. No le asiste la razón.

■ La ley federal *Child Support Enforcement Amendments of 1984* tan sólo ordenó a cada estado participante preparar unas guías, cuantificables y objetivas, de aplicación uniforme para la determinación y modificación de la cantidad que ha de satisfacerse en carácter de pensión alimentaria. Quedó a la discreción de cada jurisdicción estatal desarrollar el enfoque económico que se debe utilizar y el modelo para establecer la fórmula para la fijación de la cuantía que ha de satisfacerse como pensión alimentaria. P.F. Silva Ruiz, *Alimentos para menores de edad en Puerto Rico: las guías mandatorias basadas en criterios numéricos para la determinación y modificación de pensiones alimentarias*, 52 Rev. C. Abo. P.R. 109, 126–128 (1991).

■ El historial de las Guías Mandatorias nuestras re-

fleja que el Proyecto de Modelo de Guías Mandatorias de 1987 establecía en específico que al ingreso bruto de un alimentante se le descontarían las pensiones alimentarias previamente establecidas judicialmente sobre las que el alimentante proveyera evidencia. Durante el proceso de aprobación, este Proyecto Modelo sufrió una diversidad de cambios. La disposición sobre la deducción de pensiones previas fue muy criticada. Se señaló que ésta tenía el efecto de colocar a unos hijos en posición más ventajosa que a otros. Los alimentistas que llegaran primero al foro judicial o administrativo podrían obtener una pensión mayor que aquellos que acudieran más tarde. Teóricamente podría existir la posibilidad de que al final de la línea algún menor quedara prácticamente desprovisto de alimentos. La abogada y Prof. Sarah Torres Peralta, reconocida estudiosa del derecho de familia, citando al examinador de alimentos Eddie Ríos Ramírez, expresó que estos hijos últimos podrían ser clasificados como niños "hipotecados". E.A. Ríos Benítez, *La retención de ingresos bajo la Ley de Sustento de Menores: una reseña y varios comentarios*, 102 Rev. D.P. 255, 284 (1988); S. Torres Peralta, *La nueva Ley de Sustento de Menores y el derecho a pensión alimenticia*, 49 (Núms. 3–4) Rev. C. Abo. P.R. 17, 214–215 (1988). Las guías que finalmente quedaron aprobadas, las Guías Mandatorias de 1989, vigentes actualmente, no incluyeron como deducción las pensiones alimentarias previamente fijadas. En síntesis, las partidas que, de acuerdo con las Guías Mandatorias de 1989, pueden descontarse del ingreso bruto para determinar el ingreso neto son las siguientes:

1. Contribuciones sobre ingresos.

2. Seguro Social.

3. Deducciones por concepto de planes de retiro, asociaciones, uniones y federaciones voluntarias.

4. Descuentos o pagos por concepto de primas o pólizas de seguros de vida, contra accidentes, o de servicios de salud, siempre y cuando el alimentista sea el beneficiario de éstos.

5. Deducciones mandatorias por ley.

El Tribunal de Primera Instancia actuó con corrección al no tomar en consideración las pensiones alimentarias previas para computar el ingreso neto del peticionario Galarza Rivera.

## III

Pasemos ahora a discutir el señalamiento de error mediante el cual se alega que la pensión impuesta no es válida porque excede el límite impuesto por la sec. 1673 del C.C.P.A., *supra*, y el Art. 24(6) de la Ley Especial, *supra*.

El señor Galarza Rivera alega que la pensión impuesta por el tribunal de instancia no es válida debido a que excede el 50% de su salario neto, y que ésto constituye una violación a la sec. 1673 del C.C.P.A., *supra*.

En su parte pertinente, la citada sección del C.C.P.A. dispone:

> (2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed—
> (A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support order is issued), 50 per centum of such individual's disposable earnings for that week; and
> (B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week;
> ... except that, with respect to the disposable earnings of any individual for any workweek, the 50 per centum specified in clause (A) shall be deemed to be 55 per centum and the 60 per centum specified in clause (B) shall be deemed to be 65 per centum, if and to the extent that such earnings are subject to

garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek. 15 U.S.C. sec. 1673(b)(2).

Según el peticionario, la limitación dispuesta por esta sección constituye un límite a lo que un tribunal puede conceder por concepto de pensiones alimentarias. No le asiste la razón.

■ La sec. 1673 no es otra cosa que un mecanismo de protección al consumidor que limita un procedimiento de cobro. El propósito de esta sección, al establecer un límite porcentual a la cantidad de dinero que puede ser retenido del ingreso de una persona, es proveerle un alivio al consumidor para que éste pueda cumplir con sus compromisos económicos sin tener la necesidad de declararse en quiebra personal. Pub. L. No. 90-321, U. S. Code Cong. & Adm. News, Legislative History, págs. 1962–1966. Este propósito nada tiene que ver con la obligación de proveer alimentos. La citada sec. 1673 únicamente establece un límite a la cantidad *embargable* del ingreso del alimentante sin que constituya dicho por ciento una limitación al total que un tribunal puede imponer por concepto de pensión alimentaria.

Al aprobar el C.C.P.A., el Congreso estableció expresamente que los tribunales no estaban autorizados a emitir órdenes de retención de ingresos que sobrepasen los límites dispuestos en la sec. 1673, *supra. Evans v. Evans*, 429 F. Supp. 580, 582 (W.D. Okla. 1976). Sobre este particular, en *Hodgson v. Cleveland Municipal Court*, 326 F. Supp. 419, 431 (N.D. Ohio 1971), la Corte Federal de Distrito para Ohio expresó lo siguiente:

Applying the usage of the phrase "may not," supplied by Title V —General Provisions, Sec. 503(3), Congress expressly provides that State court orders and process issued in violation of garnishment restrictions of section 1673(a) are "both unauthorized and forbidden". It is determined and declared that interlocked section 1673(a) and section 1673(c) federally forbid the making, execution, or enforcement of any State court "order or

process" that violates the restrictions on garnishment contained in section 1673(c) or any regulation of the Secretary promulgated as 29 C.F.R. Sec. 870.10. Likewise, the effect of any State garnishment law that underlies such offending State court "order or process" is federally preempted.([3]) Véanse, también: *Midlantic Nat. Bank North v. Reif*, 732 F. Supp. 354 (D. N.Y. 1990); *Donovan v. Hamilton County Municipal Court*, 580 F. Supp. 554 (D. Ohio 1984).

 Conforme con lo dispuesto en la sec. 1673(b) del C.C.P.A., *supra*, mediante la Ley Especial se estableció, en específico, que una orden de retención de ingresos sólo podría ordenar la retención de ingresos hasta los límites impuestos por la legislación federal.([4]) Como mecanismo adicional de protección al consumidor, se impuso la responsabilidad al patrono o pagador de depositar en el tribunal el total de las cantidades reclamadas hasta los límites impuestos por la sec. 1673(b) en caso de que la cantidad ordenada resultase en exceso de lo permitido por dicha sección. Se eximió al patrono de responsabilidad por retener inadvertidamente unas cantidades en exceso de los límites dispuestos, siempre y cuando hubiese "descansado de buena fe en los límites señalados bajo dicha sección por el tribunal en su orden". 8 L.P.R.A. sec. 523(8).

 De esta manera, nuestra legislación cumple con los requisitos federales impuestos en el C.C.P.A. La Ley Especial, además, provee otros mecanismos para el cobro de

---

([3]) La subsección (b) de la sec. 1673 (15 U.S.C. sec. 1673(b)) es la que establece, a manera de excepción, unos límites más altos para el embargo de ingresos en casos de pensiones alimentarias de menores y cónyuges.

([4]) El Art. 24(6) de la Ley Especial, 8 L.P.R.A. sec. 523(6), dispone lo siguiente:

"En ningún caso la cantidad a ser retenida del sueldo o salario del deudor alimentante para el pago de la pensión corriente de cada mes, para el pago de los atrasos, si los hubiere, y para sufragar el costo de la retención que realice el patrono o pagador, conforme se dispone en el inciso (9)(c) de esta sección, podrá exceder los límites dispuestos por la Sección 303(b) del *Consumer Credit Protection Act*, no obstante lo dispuesto en el [Art. 249 del Código de Enjuiciamiento Civil]."

Cabe señalar que, a pesar de que en este artículo se hace mención la *Sección* 303(b) del C.C.P.A., realmente debió haber hecho referencia al *Artículo* 303(b) de dicha ley. En esta opinión nos referimos a Art. 303(b) como la sec. 1673(b), que es la forma en que aparece en el United States Code (U.S.C.).

atrasos de pensiones alimentarias que pueden utilizarse en caso de que la cantidad límite retenida no alcance a satisfacer las deudas por concepto de atrasos de la pensión ordenada. Entre estos mecanismos de cobro están: el embargo de bienes, Art. 25 (8 L.P.R.A. sec. 524); la retención de reintegros de contribuciones, Art. 26 (8 L.P.R.A. sec. 525); la retención de reintegros de contribuciones federales, Art. 27 (8 L.P.R.A. sec. 526), y la prestación de fianza, Art. 28 (8 L.P.R.A. sec. 527). Para el cobro de las pensiones atrasadas también se pueden utilizar los mecanismos que proveen las Reglas de Procedimiento Civil para la ejecución de sentencias. 32 L.P.R.A. Ap. III.

Ahora bien, debido a las circunstancias particulares de este caso, en el cual existe más de una orden de retención, nos vemos precisados a establecer la interpretación correcta del Art. 24 de la Ley Especial, *supra*.([5])

■ Con el propósito de agilizar el cobro de las pensiones alimentarias, el Art. 24 de la Ley Especial, *supra*, dispone que al fijarse o modificarse una pensión, el tribunal o el Administrador de la Administración de Sustento de Menores (en adelante el Administrador), según fuese el caso, emitirá una orden de retención de ingresos. Dicho artículo establece el procedimiento que se debe utilizar, incluyendo la forma en que se podrá objetar la orden de retención de ingresos. El inciso (1)(a) vigente al momento de resolverse el presente caso disponía que el tribunal, "al momento de fijar o revisar una pensión alimentaria, emitirá una orden requiriendo al patrono del alimentante ... que retenga o descuente en el origen, de los ingresos del alimentante, independientemente de si existen o no atrasos en el pago de pensión alimentaria, las cantidades señaladas en la or-

---

([5]) La Ley Especial fue enmendada por la Ley Núm. 5 de 17 de agosto de 1994, conocida como Ley Orgónica de la Administración para el Sustento de Menores, 8 L.P.R.A. secs. 501–513, 518–521a y 523–530, para añadir otras medidas o remedios adicionales para ayudar al cobro de las pensiones alimentarias atrasadas. Arts. 30(a) y 33 de la Ley Especial, 8 L.P.R.A. secs. 528a y 529.

den para satisfacer el pago de pensión, y de cualquier deuda por razón de pensiones vencidas y no pagadas".([6]) 8 L.P.R.A. ant. sec. 523(1)(a).

Pasemos ahora a analizar dicha disposición. En primer lugar, debemos distinguir entre la cantidad que debe ser retenida para el pago de la pensión corriente y la cantidad adicional ordenada que ha de ser retenida para el pago de atrasos por concepto de pensión.

Aunque la suma de ambas cantidades constituyen el total que será retenido,([7]) la cantidad que debe ser retenida por concepto de la pensión corriente goza de prelación sobre la suma retenida por concepto de atrasos. Así lo dispone el Art. 24(7), 8 L.P.R.A. sec. 523(7), al expresar que cuando exista más de una notificación para la retención de ingresos sobre un mismo alimentante "el tribunal [o el Administrador], dentro de los límites mencionados, prorrateará las cantidades retenidas entre los alimentistas, pagando preferentemente las pensiones que correspondan a menores y *las pensiones corrientes por sobre las pensiones atrasadas,* hasta los límites impuestos por la [sec. 1673(b)] del C.C.P.A., no obstante lo dispuesto en la [sec.] 1130 del Título 32". (Énfasis suplido.) De esta manera, y cumpliendo tanto con el mandato estatutario local como con el federal sobre protección al consumidor, el patrono deberá calcular si la cantidad total de las órdenes de reten-

---

([6]) El inciso (1)(a) del Art. 24 de la Ley Especial, 8 L.P.R.A. sec. 523(a), sufrió una enmienda en 1992, a los efectos de establecer que el tribunal de instancia deberá emitir *automáticamente* una orden de retención al momento de fijar o modificar una pensión alimentaria. Ley Núm. 72 de 22 de septiembre de 1992 (8 L.P.R.A. secs. 510(2), 523(1), (2) y (4) y 525(1)–(3)). Posteriormente, dicho inciso fue enmendado de nuevo para establecer que la orden de retención de ingresos sería emitida *inmediatamente.* Ley Núm. 86 de 17 de agosto de 1994, *supra.*

La Ley Núm. 86 de 1994 también enmendó el inciso (7) del Art. 24 de la Ley Especial, 8 L.P.R.A. sec. 523(7), para añadir que el prorrateo del ingreso retenido también podía hacerlo el Administrador de la Administración de Sustento de Menores.

([7]) El inciso (6) del Art. 24 de la Ley Especial, 8 L.P.R.A. sec. 523, hace referencia al total de la orden de retención, esto es, la suma de la cantidad retenida por concepto de pensión corriente y la cantidad por concepto de atrasos.

ción, esto es, la suma de la cantidad por concepto de pensiones corrientes más la cantidad por concepto de atrasos, sobrepasa el límite semanal establecido por las legislaciones federal y estatal. Si lo sobrepasa, el patrono deberá depositar en el tribunal o en la Administración de Sustento de Menores, según fuese el caso, sólo hasta los límites embargables, según la sec. 1673(b) del C.C.P.A., *supra.* Art. 24(7) de la Ley Especial, *supra.* Si con las pensiones corrientes se sobrepasa los límites o si éstos sólo son suficientes para cubrir dichas pensiones, los *atrasos* se podrán cobrar utilizando los otros mecanismos de cobro de deuda provistos en la Ley Especial o los disponibles para la ejecución de una sentencia u orden en las reglas procesales.

Pasamos ahora a considerar el ámbito de discreción que tiene el tribunal o el Administrador para determinar el contenido de una orden de retención.

 Entre los objetivos de política pública de la Ley Especial está promover que uno o ambos padres, o personas legalmente obligadas, asuman el cumplimiento de sus obligaciones morales y legales de alimentar a los menores, y contribuyan así a remediar la situación de pobreza en que se encuentran las familias sostenidas por un solo padre. Para lograr estos propósitos, la Ley Especial, entre otras cosas, provee unos procedimientos rápidos y económicos para garantizarle a los menores el pronto pago de los alimentos. Exposición de Motivos de la Ley Núm. 5 de 30 de diciembre de 1986, Leyes de Puerto Rico, págs. 750–751. Los mecanismos provistos en la Ley Especial para el cobro, tanto de pensiones alimentarias corrientes como atrasadas, son parte integral del esquema establecido para lograr estos objetivos. Estos mecanismos tienen como propósito facilitar, agilizar y garantizar el derecho de los menores a que cobren la pensión establecida. Eje central de los mecanismos de cobro es la orden automática de retención de ingresos que provee el Art. 24(1)(a) de la Ley Especial, *supra.* Dentro del procedimiento para objetar dicha orden

no se puede modificar la pensión fijada. Art. 19 de la Ley Especial, 8 L.P.R.A. sec. 518.

■ En el caso de cantidades por concepto de atrasos de pensiones alimentarias, la retención de ingresos ordenada constituye un plan de pago para satisfacer una deuda alimentaria vencida. De otra parte, la cantidad retenida por concepto de pensión corriente va dirigida a que se le provean al menor los alimentos presentes, evitando así que se conviertan en atrasos.

En el caso de autos, a la menor Verónica Galarza Mercado se le fijó una pensión de seiscientos cincuenta y nueve dólares ($659) mensuales. El señor Galarza Rivera, sin embargo, le solicitó al tribunal que se le retuvieran sólo cuatrocientos dólares ($400) mensuales para su pago. El tribunal accedió y procedió a emitir una orden de retención por la segunda cantidad, más doscientos ($250) cada dos (2) semanas por los atrasos. Al así hacerlo, actuó incorrectamente. La orden de retención tenía que ser emitida por la totalidad de la pensión alimentaria concedida, seiscientos cincuenta y nueve dólares ($659) mensuales, más una cantidad razonable para los atrasos. Procede, pues, que se modifique la orden de retención emitida contra el señor Galarza Rivera para que le sean retenidos seiscientos cincuenta y nueve dólares ($659) por concepto de pensión corriente.

Correctamente modificada la orden de retención que nos ocupa, pasemos ahora a determinar si en efecto la retención de ingresos impuesta al señor Galarza Rivera sobrepasa el límite federal.

■ Según dispone la sec. 1673(b) del C.C.P.A., *supra*, y el Art. 24(7) de la Ley Especial, *supra*, un patrono no podrá retener más del 50% del salario neto de un empleado, en casos en que el alimentante tenga dependientes previos o que recaiga sobre el empleado alimentante más de una orden de retención para el pago de alimentos de menores o del cónyuge. Este por ciento aumenta a un 55%

cuando existen también atrasos de pensiones alimentarias que corresponden a un período anterior a las doce (12) semanas que precedieron el período de pago. En la situación que nos ocupa, el señor Galarza Rivera ya tenía una orden de retención previa para dos (2) hijos dependientes, por lo que no se le podrá retener más de 55% de su salario neto hasta que satisfaga los atrasos. Una vez satisfechos los atrasos, no se le podrá retener más del 50% de su ingreso neto. Veamos, pues, la manera correcta de realizar el cómputo.

En el caso ante nuestra consideración, hay que comenzar por uniformar las cifras disponibles para poder determinar si la orden de retención de ingresos sobrepasa los límites establecidos por la sec. 1673(b) del C.C.P.A., *supra.* El sueldo del señor Galarza Rivera está computado mensualmente; la primera orden de retención es cada dos (2) semanas y la segunda es mensual para la pensión corriente. El pago de los atrasos es quincenal. De otra parte, la sec. 1673(b) del C.C.P.A., *supra,* establece un límite *semanal.* La fórmula que debe utilizarse para convertir el salario mensual en semanal es la siguiente: sueldo x 12 (que representa el número de meses) dividido entre 52 (que representa el número de semanas que contiene el año). Utilizando esta fórmula para computar el salario semanal del señor Galarza Rivera, éste resultó ser de ochocientos diez dólares ($810) semanales.[8] El 55% de esta cantidad es cuatrocientos cuarenta y cinco dólares ($445). Esto quiere decir que, a base del ingreso neto en esos momentos del señor Galarza Rivera, a éste no se le podía retener de su ingreso más de cuatrocientos cuarenta y cinco dólares ($445) semanales.

La primera orden dispuso que se le retuvieran ochocientos treinta y cuatro dólares con noventa y dos centavos ($834.92) cada dos (2) semanas, cantidad que, multiplicada

---

[8] El salario neto del señor Galarza Rivera es de tres mil quinientos diez dólares ($3,510) mensuales.

por doce (12) y dividida entre veintiséis (26), equivale a trescientos ochenta y cinco dólares con treinta y cuatro centavos ($385.34) semanales. La segunda orden equivocadamente ordenó la retención de cuatrocientos dólares ($400) mensuales. Esta cantidad la hemos modificado para que incluya el total de la pensión alimentaria impuesta para beneficio de la menor Verónica Galarza Mercado de seiscientos cincuenta y nueve dólares ($659). La cantidad semanal equivalente a esta suma es ciento cincuenta y dos dólares con siete centavos ($152.07). Esta segunda orden también incluyó la retención por concepto de atrasos de doscientos cincuenta dólares ($250) quincenales. Para determinar el equivalente semanal de dicha cantidad, multiplicamos ésta por doce (12) y la dividimos entre veinticuatro (24) (que representa el número de pagos quincenales al año) para obtener la cantidad semanal. El resultado es ciento veinticinco dólares ($125) semanales.

Finalmente, se tienen que sumar todas las cifras semanales de las órdenes de retención: $385.34 + $152.07 + $125.38. El total de dicho cómputo es $662.41. Esta suma representa aproximadamente el 81.7% del salario semanal del señor Galarza Rivera, cifra que sobrepasa el límite federal de 55% aplicable a este caso.

Esto significa que el patrono del señor Galarza Rivera deberá retener y depositar en el tribunal, hasta la suma que representa el 55% del salario embargable del peticionario, o sea cuatrocientos cuarenta y cinco dólares ($445) semanales.[9] Art. 24(7) de la Ley Especial, *supra*. El tribunal, a su vez, deberá prorratear la cantidad depositada de cuatrocientos cuarenta y cinco dólares ($445) semanales entre el total de hijos alimentistas del señor Galarza Rivera. Íd. Para cobrar la parte de las pensiones alimentarias no cubiertas por las órdenes de retención, se podrán utilizar los otros mecanismos de cobro provistos por la Ley

---

[9] A esta cantidad el patrono le puede deducir los costos de la retención que realice. Art. 24(6) y (9) de la Ley Especial, 8 L.P.R.A. sec. 523(6) y (9).

Especial y los procedimientos que establecen las Reglas de Procedimiento Civil para la ejecución de sentencias.

## IV

■■■ En Puerto Rico es un axioma plenamente reconocido que los casos de menores están revestidos del más alto intéres público. *Ríos Rosario v. Vidal Ramos*, 134 D.P.R. 3 (1993); *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61 (1987); *Rodríguez Avilés v. Rodríguez Beruff*, 117 D.P.R. 616 (1986); *Otero Fernández v. Alguacil*, 116 D.P.R. 733 (1985); *Martínez v. Rivera Hernández*, 116 D.P.R. 164 (1985). En éstos, el interés no puede ser otro que el bienestar del menor. En *Negrón Rivera y Bonilla, Ex parte,* supra, pág. 72, citando al tratadista Beltrán de Heredia, expresamos en cuanto a la pensión alimentaria, que ésta " 'tiene su fundamento en el *derecho a la vida* configurado como un derecho de la personalidad' ".[10] (Énfasis en el original.) Al crearse la Administración de Asuntos de Menores en el Informe al Senado de la Comisión de Reformas Gubernamentales de 15 de julio de 1994, pág. 20, se expresó que no se puede perder de vista que los servicios a los niños hay "que ofrecerlos en función de las características de la familia y de la comunidad de la que forman parte". Con estos principios en mente, pasemos ahora a considerar los aspectos procesales que plantean las normas de derecho antes expuestas.

Debido a que por disposición estatutaria el patrono del señor Galarza Rivera sólo podrá retener hasta el 55% del ingreso semanal de éste, o sea, la cantidad de cuatrocientos cuarenta y cinco dólares ($445), la cual deberá depositar en el tribunal para ser prorrateada entre todos los alimentistas, los dos (2) hijos del señor Galarza Rivera, alimentistas anteriores, van a sufrir una rebaja en la can-

---

[10] P. Beltrán de Heredia, *La obligación legal de alimentos entre parientes*, Salamanca, Ed. Anaya, 1958, T. III, Núm. 3, pág. 33.

tidad de la pensión alimentaria que efectivamente reciben a través de la utilización de este mecanismo de cobro. De otra parte, la menor Galarza Mercado no recibirá la totalidad de su pensión ni parte de los atrasos. Todos estos alimentistas se van a privar de la garantía que representa recibir, mediante el mecanismo de retención de ingresos, la totalidad de la pensión asignada por el tribunal. Esto hace a todos los alimentistas, los dos (2) hijos anteriores del alimentante y la menor Galarza Mercado, partes indispensables en el procedimiento de prorrateo. No cabe duda que sus intereses y derechos van a verse afectados por este procedimiento. Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Cepeda Torres v. García Ortiz*, 132 D.P.R. 698 (1993); *Granados v. Rodríguez Estrada II*, 124 D.P.R. 593 (1989); *Alicea Álvarez v. Valle Bello, Inc.*, 111 D.P.R. 847 (1982); *Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407 (1982); *Fuentes v. Tribl. de Distrito*, 73 D.P.R. 959 (1952).

La Regla 16.1 de Procedimiento Civil, *supra*, tiene como propósito proteger a las personas ausentes de los efectos que pudiera tener la resolución del incidente de que se trate y evitar, mediante la concesión de un remedio efectivo y completo, la multiplicidad de pleitos.

A la luz de estas circunstancias, antes de proceder al prorrateo, el tribunal debe ordenar que se notifique del procedimiento a los alimentistas anteriores y a la menor Galarza Mercado para que todos tengan la oportunidad de comparecer y defender sus derechos, si así lo desean. Al hacer el prorrateo, el tribunal o el Administrador, según fuese el caso, deberá tomar en consideración que, en lo que se refiere a alimentos de menores, el concepto básico que ha de utilizarse tiene que ser el de la necesidad de los menores, según hemos aplicado e interpretado el Art. 146 del Código Civil, 31 L.P.R.A. sec. 565.[11]

---

[11] *Guadalupe Viera v. Morell*, 115 D.P.R. 4 (1983).

■ Ahora bien, por la naturaleza apremiante de los procedimientos para los alimentos de menores, éstos tienen que ser rápidos y económicos. Esto, sin embargo, no significa que se pueda privar a un menor de la oportunidad de expresarse sobre una determinación que va a afectar la cantidad de alimentos que ha estado recibiendo o que tiene derecho a recibir, y con los que cuenta para sufragar sus necesidades básicas. Una determinación que disminuya la cantidad de dinero que un menor recibe o habrá de recibir mediante el mecanismo de retención de ingresos puede, de facto, constituir una rebaja de la pensión alimentaria que efectivamente reciba el menor. Esto es una adjudicación de importantes derechos que no puede tomarse sin brindarle la oportunidad a los menores afectados de expresarse.

■ Con el propósito de llenar la laguna procesal que existe en cuanto a los procedimientos relacionados con el prorrateo de ingresos retenidos en casos de alimentos de menores, y mientras no se aprueben las normas procesales pertinentes, el prorrateo que lleve a cabo el tribunal o el Administrador, según fuese el caso, como mínimo requiere una previa notificación a todos los alimentistas que puedan quedar afectados y una oportunidad para que éstos puedan expresarse. La notificación debe hacerse a no más tardar de los cinco (5) días después de haberse depositado el ingreso retenido por el patrono en el tribunal o en la Administración de Sustento de Menores, según fuese el caso. Se le concederá a todos los alimentistas un término que no deberá exceder de diez (10) días a partir de la notificación, salvo que el tribunal o esta Administración determinen que por las circunstancias particulares del caso se requiere más tiempo para que las partes comparezcan y se expresen sobre el prorrateo. Una vez completado este procedimiento el tribunal o el Administrador, dentro del término de cinco (5) días de haber sometido el asunto, hará el prorrateo y notificará a los alimentistas. Para poder realizar el prorrateo con la diligencia que su naturaleza requiere, en todo

caso donde se vayan a conceder alimentos, el alimentante, si está sujeto al pago de pensiones alimentarias previas, deberá informar el nombre de los alimentistas anteriores, la dirección y el teléfono de éstos y el nombre, número del caso y sala del tribunal donde se impuso la pensión, y las cuantías fijadas para cada alimentista.

Con esta información, una vez fijada la pensión para el alimentista solicitante, el tribunal puede determinar en ese momento si ésta, unida a las pensiones previas, sobrepasa los límites permitidos para la retención de ingresos. Si los límites se sobrepasan, se ordenará al patrono depositar en el tribunal el límite permitido de 50% o 55%, según fuese el caso, y se procederá a hacer la notificación correspondiente a los alimentistas del procedimiento de prorrateo.

## V

En el cuarto error planteado, señala el peticionario que el tribunal de instancia no resolvió sobre la patria potestad compartida, aun cuando ésta fue solicitada en la demanda original y en la moción de reconsideración.

La patria potestad es el conjunto de derechos que tienen los padres con relación a la persona y los bienes de sus hijos no emancipados. *Torres, Ex parte*, 118 D.P.R. 469 (1987). La patria potestad es inherente a los padres y un derecho fundamental de ambos. El Código Civil establece la regla general de que la patria potestad corresponde a ambos padres en el supuesto de que estén casados y, en cuanto al hijo extramatrimonial, a aquel que lo hubiese reconocido. *Torres, Ex parte*, supra, pág. 473.

El Art. 152 del Código Civil, 31 L.P.R.A. sec. 591, dispone que la patria potestad corresponderá a uno sólo de los padres cuando

(1) el otro haya muerto, se encuentre ausente o esté impedido legalmente y

(2) sólo uno haya reconocido o adoptado al menor.

Hemos examinado el recurso, y los autos de este caso, y no encontramos que el señor Galarza Rivera haya sido privado de la patria potestad de su hija. De la demanda presentada por el peticionario surge únicamente que éste cedió la custodia de la niña, pero no surge que haya renunciado o haya sido privado de la patria potestad sobre la menor. Sin embargo, de los autos surge que el tribunal de instancia no se expresó sobre el asunto. Este aspecto debe presentarse de nuevo ante el Tribunal de Primera Instancia. A nivel apelativo carecemos de los elementos necesarios para adjudicarlo.

Por los fundamentos antes expuestos, *se dictará sentencia mediante la cual se modifica la orden de retención de ingresos emitida a favor de la menor Verónica Galarza Mercado, para que ésta incluya el monto total de la pensión alimentaria impuesta de seiscientos cincuenta y nueve dólares ($659) y se devuelve el caso al foro de instancia para que continúen los procedimientos de forma compatible con esta opinión.*

El Juez Asociado Señor Rebollo López no intervino.