JOSÉ ARSENIO TORRES ET AL., demandante y recurrido, *v.* JOSÉ E. APONTE, ALCALDE DEL MUNICIPIO DE CAROLINA, demandado y recurrente.

*Número:* RE-93-459 *Resuelto:* 7 de febrero de 1994

---

*Jennie Rabell, Carmen M. Graulau Serrano* y *Pedro E. Ortiz Álvarez,* abogados del demandado y recurrente; *Carlos Lugo Fiol, Procurador General Interino,* y *Maria Adaljisa Dávila, Procuradora General Auxiliar,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

El Municipio de Carolina acude ante nos mediante un recurso de revisión para solicitar que revoquemos una resolución dictada por el Tribunal Superior (Sala de Carolina). En esta resolución, el tribunal emitió un *mandamus* para imponer al Alcalde de Carolina la obligación de recoger los desperdicios sólidos generados por las escuelas ubicadas en este Municipio. Procede modificar la resolución recurrida y revocar únicamente la parte que anula el contrato suscrito entre Browning Ferries Industries of Puerto Rico, Inc. (en adelante B.F.I.) y el Municipio de Carolina. Veamos.

# I

El Municipio de Carolina (en adelante Municipio) proveyó gratuitamente el servicio de recogido de basura a las escuelas del Departamento de Educación ubicadas en su jurisdicción, hasta que privatizó este servicio el 16 de abril de 1993, cuando se suscribió un contrato con B.F.I.

En virtud de este contrato, se otorgó a B.F.I. una franquicia exclusiva para suministrar todo el personal, el servicio, el equipo y los camiones para el recogido, el retiro y la disposición de desperdicios en todas las estructuras físicas dedicadas al uso residencial. Sin embargo, se excluyó a las escuelas, entre otras áreas. Por esta razón, el Municipio notificó en varias ocasiones al Departamento de Educación y le instó a proveer directamente este servicio.

Después de intentar infructuosamente que el Municipio asumiera tal obligación, el Departamento de Educación presentó el 17 de septiembre de 1993 una solicitud de entredicho provisional, interdicto preliminar y permanente ante el Tribunal Superior, Sala de Carolina. Solicitó que se ordenara al Alcalde del Municipio a realizar el recogido en las escuelas.

Celebrada la vista correspondiente, el Tribunal Superior concluyó que la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (en adelante Ley de Municipios Autónomos), Ley Núm. 81 de 30 de agosto de 1991 (21 L.P.R.A. sec. 4001 *et seq.*), impone a los municipios la obligación de recoger los desperdicios sin excluir a las escuelas. Por ende, determinó que un contrato o cláusula contractual que excluya a las escuelas es nulo por ser contrario a la ley, a la moral y al orden público.

De acuerdo con la anterior conclusión, el tribunal sentenciador emitió la orden siguiente:

> Se ordena *al Alcalde de Carolina José E. Aponte* a recoger los desperdicios sólidos (basura) en las escuelas públicas de dicha municipalidad acumulada desde el 7 de septiembre de 1993, fecha en que comenzaron las clases en las escuelas públicas

dentro de las próximas 24 horas a partir de dictado este recurso a su costo y riesgo. Las personas que se utilicen en dicho recogido actuaran [sic] acompañados por un alguacil de este Tribunal Superior.

La presente orden será de estricto cumplimiento *para el Alcalde y/o cualquier funcionario que actúe en su capacidad* so pena de desacato.

Se declara SIN LUGAR la reconvención instada por la parte peticionada y se le imponen las costas del litigio a dicha parte. (Énfasis suplido.) Anejo I, pág. 9.

No conforme, la parte demandada acudió ante nos el 27 de septiembre de 1993 para alegar la comisión de los siguientes errores:

1. Erró el Honorable Tribunal al no reconocer que el recogido de desperdicios sólidos de las facilidades educativas públicas es deber del Departamento de Educación y no del Municipio de Carolina.

2. Erró el Honorable Tribunal al imponer al Municipio de Carolina el deber de costear un servicio con fondos municipales cuando compete al Gobierno estatal cubrir tal costo.

3. Erró el Honorable Tribunal al declarar nulo el contrato de privatización del servicio de disposición de desperdicios sólidos cuando ésto [sic] no fue alegado, era innecesario para la resolución de la controversia, y ausente una parte indispensable para tal adjudicación. Solicitud de revisión, págs. 8–9.

A petición del Municipio, acordamos revisar.

II

El Municipio alega que la obligación de proveer una educación pública adecuada recae en el Gobierno Central, por lo que a éste corresponde prestar el servicio de recogido de basura a las escuelas públicas. Sostiene que la Ley de Municipios Autónomos no impone a los municipios la obligación de proveer este servicio. Por el contrario, les concede amplia discreción al respecto. No es enteramente correcta la posición del Municipio.

El Art. 2.004 de la Ley de Municipios Autóno-

mos, 21 L.P.R.A. sec. 4054, dispone, sobre las facultades generales del municipio y en lo pertinente, lo siguiente:

> *Corresponde a cada municipio ordenar, reglamentar y resolver cuanto sea necesario o conveniente para atender las necesidades locales y para su mayor prosperidad y desarrollo.* Los municipios estarán investidos de las facultades necesarias y convenientes para llevar a cabo las siguientes funciones y actividades:
>
> (a) Establecer servicios y programas de recogido o recolección de desperdicios y de saneamiento público en general y adoptar las normas y medidas necesarias o útiles para el ornato, *la higiene, y el control y la disposición adecuada de los desperdicios.* (Énfasis suplido.)

Por otro lado, el Art. 2.005 de esta ley, 21 L.P.R.A. sec. 4055, faculta a los municipios para reglamentar el proceso de recogido y disposición de desperdicios sólidos, imponer penalidades por violaciones a las normas adoptadas, y establecer, mantener y operar (por sí o mediante contratación con entes privados) los servicios y programas de recogido y recolección de desperdicios.

Se autoriza, además, a los municipios a imponer tarifas por el recogido de desperdicios en sectores residenciales, industriales, comerciales y gubernamentales.[1] Estos ingresos pueden utilizarse únicamente para financiar los programas de recogido antes mencionados. 21 L.P.R.A. sec. 4055(b).[2]

---

[1] Antes de cobrar las tarifas por el recogido de basura en los sectores residenciales, un municipio debe celebrar unas vistas públicas y aprobar la correspondiente ordenanza. Cumplidos ambos requisitos, la Junta de Gobierno del Centro de Recaudaciones de Ingresos Municipales establece las tarifas aplicables. Las tarifas a ser impuestas en sectores industriales, comerciales y gubernamentales se establecen mediante ordenanza, independientemente de lo dispuesto para los sectores residenciales. 21 L.P.R.A. sec. 4055(b).

[2] Esta sección dispone, en lo pertinente, lo siguiente:

"El municipio podrá regular y reglamentar el proceso de recogido y disposición de desperdicios sólidos en armonía con la política pública ambiental del Estado Libre Asociado de Puerto Rico, disponer por ordenanza la forma en que se realizará la disposición y recogido e imponer penalidades por violaciones a las normas que se adopten. También podrá establecer, mantener y operar por sí, o mediante contratación con cualquier persona privada, servicios y programas de recogido y recolección de desperdicios y de saneamiento público en general.

114

El texto de las anteriores disposiciones es claro.(³) Impone a los municipios la responsabilidad primaria de atender ciertas necesidades locales, las cuales enumera, a fin de lograr la mayor prosperidad y desarrollo de la comunidad. Una de las necesidades inmediatas que debe ser atendida es el recogido de basura, y se concede a los municipios discreción en cuanto al establecimiento de servicios y programas de recogido. Se provee, además, la opción de cobrar por el servicio, de forma que los municipios tengan el apoyo fiscal necesario para cumplir con su obligación.

La delegación de esta responsabilidad primaria es equivalente con el propósito del municipio, según se esbozó en el Art. 1.002 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4001 n. Éste consiste en que la unidad básica para la administración comunitaria (el municipio) provea los servicios más inmediatos que requieran sus habitantes, partiendo de los recursos disponibles y sus proyecciones a corto, mediano y largo plazo. Este propósito refleja el principio cardinal del pensamiento político democrático en cuanto a que el poder decisional sobre los asuntos que afec-

"(b) Tarifas por recogido y disposición de desperdicios.—Se autoriza a los municipios a imponer mediante ordenanza una tarifa por el recogido de desperdicios sólidos en sectores residenciales. Previo a la aprobación de cualquier ordenanza a esos fines, el municipio deberá celebrar vistas públicas en un lugar y hora que sea accesible a la comunidad. La Junta de Gobierno del Centro de Recaudación de Ingresos Municipales con el voto unánime de los Alcaldes miembros de la misma establecerá las tarifas aplicables para el recogido de desperdicios sólidos en sectores residenciales o domésticos. Los municipios también podrán fijar tarifas por el recogido de desperdicios sólidos en sectores industriales, comerciales y gubernamentales, mediante ordenanza al efecto y sin sujeción a las tarifas que fije dicho Centro para los sectores residenciales.

"Todo municipio mantendrá los ingresos que reciba por concepto de las tarifas de recogido de desperdicios sólidos en una cuenta separada. Tales ingresos se utilizarán única y exclusivamente para financiar cualesquiera actividades, programas, proyectos y facilidades relacionadas con el recogido, disposición y tratamiento de desperdicios sólidos." (Énfasis suprimido.) 21 L.P.R.A. sec. 4055.

(³) Cuando el texto de la ley es claro y libre de ambigüedades, no debe ser menospreciado bajo el pretexto de cumplir su espíritu. Art. 14 del Código Civil, 31 L.P.R.A. sec. 14.

tan la vida de los ciudadanos en una democracia recaiga en niveles, organismos y personas que le sean directamente responsables.(4)

Aun antes de concederse la autonomía municipal, se responsabilizó a los municipios por la prestación de servicios esenciales como la limpieza y el recogido de basura. La Ley Municipal de 1919, según enmendada por la Ley Núm. 60 de 1921, Leyes de Puerto Rico, pág. 437, disponía en su Art. 9 lo siguiente:

> ... Los municipios tendrán plenas facultades legislativas y administrativas en todo asunto que fuere de naturaleza puramente local y que se relacionen con los ramos de obras, instrucción, beneficencia, orden y seguridad públicos, policía, cárceles, asilos, hospitales, *higiene,* ornato, alineación de calles, apertura de parques, reglamentación de construcciones, propiedades y rentas municipales, vías públicas, suministro de agua, alumbrado público, alcantarillado, transportes urbanos, cementerios, mercados, mataderos, carnicerías y toda clase de instituciones, servicios y otras actividades en beneficio de la municipalidad en general y para fomento de éstas; Disponiéndose, que estas facultades se ejercitarán sujetas a las leyes de Puerto Rico y de los Estados Unidos que estuvieren en vigor, y que no podrá adoptarse ninguna ordenanza, resolución ni acuerdo que en modo alguno viole ninguna de dichas leyes; disponiéndose, además, que el servicio de sanidad en cada municipalidad estará a cargo de un oficial o inspector de sanidad nombrado por el Comisionado de Sanidad de Puerto Rico y cuyo sueldo será fijado por la ley, y todos los gastos de este servicio de sanidad serán hechos por el Gobierno Insular; Disponiéndose también, que el Tesorero de Puerto Rico retendrá, y por la presente se le ordena que retenga en su poder de cualesquiera fondos en su posesión pertenecientes a los respectivos municipios, una cantidad igual al 6 por ciento del ingreso neto de cada municipio, las cuales cantidades serán ingresadas en los fondos generales del Tesoro Insular para hacer frente en parte a los gastos en que incurriere el servicio de sanidad, a disposición del Depar-

---

(4) Durante el debate de la Cámara de Representantes sobre la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 se cuestionó si los municipios estaban obligados por ley a cobrar por el servicio de recogido de basura. Se enmendó el proyecto de ley para contestar en la negativa. En ningún momento se puso en duda la responsabilidad primaria de proveer el servicio, aunque sí quedó claro, como explicamos posteriormente, que el municipio no tiene que continuar recogiendo la basura si el usuario no paga las tarifas impuestas.

tamento Insular de Sanidad, *con excepción del de limpieza pública que ejecutará el municipio de su cuenta.* (Énfasis en el original suprimido y énfasis suplido.) Según citada en J. Herrero, *Compilación de las enmiendas a códigos en Puerto Rico 1912–1923*, San Juan, Negociado de Materiales, Imprenta y Transporte, 1924, págs. 95–96.[5]

Por otro lado, la Convención Constituyente rechazó la posibilidad de conceder la autonomía municipal por considerar deseable mantener un mayor control del Gobierno Central. A pesar de esto, ya se tenía en cuenta la posibilidad de autorizar a los municipios a atender los asuntos necesarios para el bienestar general, entre ellos, la limpieza. Esto surgió del diálogo siguiente:

Sr. Alvarado: Me propongo formular una enmienda, pero antes deseo saber la contestación que daría la comisión que ha presentado esta proposición sustituta, a algunas preguntas que habrán de orientarme respecto a la enmienda a formularse.

Quiero preguntar al Presidente de la Comisión si la frase contenida en la línea cuarta, de la primera página, donde se dice que el Estado ... "El poder del Estado Libre Asociado de Puerto Rico para crear, consolidar y reorganizar municipios y para modificar sus límites territoriales ..." donde empieza: "Para determinar lo relativo al régimen y función de los mismos y para autorizarlos a desarrollar problemas [sic] de bienestar general ..." Si esa frase incluye o no la posibilidad de que el Gobierno del Estado Libre pueda, por ley, autorizar a los municipios a atender—mediante legislación municipal, incluyendo la inversión de recursos y créditos municipales—los siguientes temas: [La] eliminación de arrabales; el desarrollo urbano planificado; [y el] limpiar, planificar, reconstruir, rehabilitar y desarrollar áreas atrasadas e insolubles o bajo el *standard* deseable. Si todas esas facultades quedan comprendidas, dentro del texto del lenguaje, [y] cómo [han] de ser susceptibles de autorizar a los municipios, por parte del Gobierno del Estado Libre Asociado ...

Sr. Polanco Abreu: Señor Presidente.

Sr. Presidente: Señor Delegado.

---

[5] Ya en 1940, la ley municipal vigente incluía la misma directriz en su Art. 7, con una pequeña modificación en su última frase: "Disponiéndose, también, que la limpieza pública será dirigida y costeada, respectivamente, por cada municipio." Según citada en M. Rodríguez Ramos, *Ley Municipal (Legislación y Jurisprudencia)*, San Juan, Ed. Biblioteca de Autores Puertorriqueños, 1940, pág. 23.

Sr. Polanco Abreu: Contesto la pregunta del compañero Alvarado, a nombre de la comisión, informándole que la comisión desea que se entienda claramente que cuando hemos usado un término general de programas de bienestar general ... entendemos que lo que él desea ... o lo que él pregunta está comprendido dentro de ese término.

Hacemos más clara todavía la posición de la comisión, que lo que está en el informe, indicando, para que así aparezca del [acta] como intención de la comisión, que los distintos programas que mencionamos en el informe escrito, no son de carácter limitativo, sino que están comprendidos, además, todos los programas que conlleven el levantar el nivel de vida, y estén comprendidos dentro del bienestar general: arrabales, mejoras hospitalarias, planificación, urbanismo, desarrollo de tierras insalubres para convertirlas en sitios de recreos o caseríos. Todo eso está comprendido, a nuestro juicio, dentro de la frase, "programas de bienestar general."

La comisión agradece al compañero Alvarado el haber hecho esta aclaración porque así es como lo entendemos nosotros, y queremos que así conste en las actas y en el *record* de esta Asamblea Constituyente.

Sr. Alvarado: Entonces, señor Presidente, de tal manera me satisface la contestación de la comisión que la enmienda que me proponía hacer para que el lenguaje fuera específico sobre este punto, entiendo que ya no es necesaria, toda vez que se ha explicado el alcance de ese lenguaje general que se usa.[6] 3 Diario de Sesiones de la Convención Constituyente 2035, 2046–2047 (1952).

De acuerdo con lo anterior, la Ley Núm. 146 de 18 de junio de 1980 (21 L.P.R.A. secs. 2001, 2051–2055, 3001–3005 y 3051 *et seq.*) dispuso en su Art 2.04(10) que los municipios tendrían todos los poderes necesarios para

---

[6] Este diálogo surgió al discutirse la Sec. 1 del Art. VI de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, ed. 1982, pág. 362, que establece:

"La Asamblea Legislativa tendrá facultad para crear, suprimir, consolidar y reorganizar municipios, modificar sus límites territoriales y determinar lo relativo a su régimen y función; y podrá autorizarlos, además, a desarrollar programas de bienestar general y a crear aquellos organismos que fueren necesarios a tal fin.

"Ninguna ley para suprimir o consolidar municipios tendrá efectividad hasta que sea ratificada, en referéndum, por la mayoría de los electores capacitados que participen en el mismo en cada uno de los municipios a suprimirse o consolidarse. La forma del referéndum se determinará por ley que deberá incluir aquellos procedimientos aplicables de la legislación electoral vigente a la fecha de la aprobación de la ley."

cumplir con sus responsabilidades, entre otras, la de saneamiento. 21 L.P.R.A. sec. 2054(10).

 Por ende, antes de la aprobación de la Ley de Municipios Autónomos, los municipios tenían la obligación indiscutible de proveer el servicio de recogido de basura a sus residentes. Esta obligación se convirtió en una responsabilidad primaria al aprobarse la ley vigente y varió su naturaleza en cuanto a aquellos municipios que decidan cobrar por el servicio. En esos casos, la obligación del municipio está condicionada a que el usuario pague la tarifa aplicable. De no hacerlo, el municipio tendrá la libertad de, entre otras sanciones, suspender el servicio.[7]

---

[7] Del historial legislativo se desprende claramente que la nueva ley otorgó a los municipios el poder de cobrar tarifas y suspender el servicio en los casos en que el usuario no pague por el recogido de basura. Esto surge del siguiente diálogo en el hemiciclo de la Cámara de Representantes:

"SR. MORENO RODRIGUEZ: Sí, señor Presidente. ¿Cuáles son los recursos que va [a] haber disponibles para compeler a un ciudadano a cumplir con ese pago?

"SR. NEGRON PADILLA: Básicamente lo que disponga el municipio. El municipio puede establecer una ordenanza, hay mecanismos legales, hay mecanismos [en] derecho.

"SR. MORENO RODRIGUEZ: Señor Presidente, ¿entiende usted que debe de incluirse donde corresponda eso que usted nos está diciendo?

"SR. NEGRON PADILLA: No, porque eso es una cuestión estrictamente prerrogativa del municipio.

"SR. MORENO RODRIGUEZ: Lo sabemos, como todo esto son prerrogativas para los municipios, pero queremos dejar establecido, o sea, qué es lo que va a hacer el municipio con personas que no paguen este servicio. O sea, se va a decir que el municipio establezca un reglamento, lo que sea.

"SR. NEGRON PADILLA: Pudiera ser, pudiera ser.

"SR. MORENO RODRIGUEZ: ¿Hay algún inconveniente para que se incluya la facultad que se le va a dar el municipio para bregar con esto, en este Proyecto que estamos discutiendo?

"SR. NEGRON PADILLA: Eso es una cuestión del gobierno municipal donde está la facultad del Ejecutivo con la Asamblea Municipal. Pues, vamos a permitir al gobierno municipal piense si debe establecer por medio de una ordenanza qué es lo que va a pasar. *Pero la lógica nos dice que puede suspender el servicio de recogido de basura, y pudiera el municipio que quiera recurrir a las cortes en un procedimiento de cobro de ese dinero. O sea, que yo creo que cada municipio va a establecer unos criterios para eso.*

"SR. PRESIDENTE: El Representante Negrón ha contestado acertadamente que esto es una facultad que está dentro de las facultades municipales. *Y si aquí se reconoce por ley que el municipio puede cobrar un cargo por dicho servicio está implícito que el municipio puede no ofrecer el servicio a aquellos que no pagan por dicho*

Sin embargo, en este caso el Municipio no había impuesto tarifas por el recogido de basura cuando decidió suspender el servicio a las escuelas públicas. Por tal razón, subsistió su responsabilidad primaria de proveerles tal servicio.

Por otro lado, la Ley de Municipios Autónomos no excluye a las escuelas públicas y sería absurdo, además, pretender que la Asamblea Legislativa especifique cada área que recibirá el servicio.(⁸)

Además, la Ley Núm. 68 de 28 de agosto de 1990, Ley Orgánica del Departamento de Educación, 3 L.P.R.A. sec. 391 *et seq.*, no exime a los Municipios de la obligación de proveer este servicio a las escuelas públicas. Si bien es cierto que su Art. 5.03(9), 3 L.P.R.A. sec. 395b(9), dispone que corresponde al Superintendente de Escuelas adquirir los materiales y servicios para el mantenimiento y las mejoras de las escuelas, no es menos cierto que el Art. 5.03(6) impone a este funcionario la obligación de "[c]oordinar con las agencias estatales, *los municipios*, y las empresas privadas la labor de mantenimiento y reparaciones menores de la planta física de las escuelas para conservarlas en condiciones adecuadas". (Énfasis suplido.) 3 L.P.R.A. sec. 395b(6). Además, el hecho de que corresponda al Gobierno Central el mantenimiento de las escuelas no necesariamente exime a los municipios de proveer el servicio de recogido de basura. Máxime cuando la Ley de Municipios Autónomos les autoriza a cobrar por prestar este servicio.

Las escuelas públicas proveen un servicio inigualable a los estudiantes, quienes se ven seriamente afectados por la acumulación de basura en los planteles escolares. Estos estudiantes y los vecinos de las escuelas son aquellos ha-

---

*servicio, o que no estén dispuestos a pagar los cargos que se establezcan mediante la reglamentación, mediante la decisión, lo que sea ....*" (Énfasis suplido.) Diario de Sesiones de la Cámara de Representantes, 20 de agosto de 1991, págs. 404–405.

(⁸) Recordemos que el municipio se define como "una demarcación geográfica con todos sus barrios, que tiene nombre particular y está regida por un gobierno local compuesto de un Poder Legislativo y un Poder Ejecutivo". 21 L.P.R.A. sec. 4001(u).

bitantes a quienes los municipios deben proveer los servicios. Aparentemente, el Municipio reconoció tal obligación en el pasado, al establecer una tradición de recogido de basura a las escuelas ubicadas en su jurisdicción.

De acuerdo con lo anterior, resolvemos que en el caso de autos el Municipio tenía la responsabilidad primaria de proveer el servicio de recogido de basura a las escuelas públicas ubicadas en su territorio. Esta decisión no limita la discreción del Municipio para privatizar el servicio ni impide que cobre por el servicio, tanto al Departamento de Educación como a otros usuarios, según lo dispuesto en el Art. 2.005 antes citado. Máxime cuando el Departamento de Educación ha expresado estar dispuesto a pagar por el servicio.[9]

Por lo anterior, concluimos que los dos (2) primeros errores planteados no fueron cometidos.[10] Procede evaluar si se cometió el tercer error, sobre la falta de acumulación de la parte indispensable.

## III

El tribunal sentenciador concluyó que era nulo el contrato entre el Municipio y B.F.I. por excluir a las escuelas. Por esta razón, la parte recurrente arguye que faltó acumular a B.F.I. como parte indispensable.[11]

La Regla 16.1 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III) dispone lo siguiente:

---

[9] En su Resolución de 8 de octubre de 1993, el tribunal de instancia aclaró que impuso al Municipio de Carolina la obligación de recoger la basura *acumulada* a su costo como medida punitiva, pero que esto no afectaba su facultad de cobrar por la continuación del servicio. El recogido de basura acumulada finalizó el 15 de octubre de 1993.

[10] Por entender que fue correcta la orden que impuso al Municipio la obligación de recoger la basura de las escuelas, consideramos innecesario resolver si procedía hacerlo por medio de *mandamus* o de *injunction*.

[11] B.F.I. solicitó permiso para intervenir en los procedimientos ante nos, para oponerse a la anulación del contrato de marras. La decisión que aquí tomamos hace innecesario expresarse sobre el asunto.

> Las personas que tuvie[s]en un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada.

■ Una parte indispensable es " 'aquella persona cuyos derechos e intereses podrían quedar destru[i]dos o inevitablemente afectados por una sentencia dictada estando esa persona ausente del litigio' ". *Cepeda Torres v. García Ortiz*, 132 D.P.R. 698 (1993), citando a *Fuentes v. Tribl. de Distrito*, 73 D.P.R. 959, 981 (1952).

En este caso, las partes están de acuerdo en que era innecesario anular el contrato de marras para obligar al Municipio a que cumpliera con su obligación. De hecho, la parte dispositiva de la "resolución" se refiere exclusivamente al Alcalde de Carolina, Hon. José E. Aponte, al ordenarle que en veinticuatro (24) horas recoja la basura acumulada en las escuelas.

El cumplimiento de esta orden para nada afecta el contrato vigente entre B.F.I. y el Municipio. El Alcalde puede proveer el servicio a las escuelas con recursos municipales, contratando a otra compañía o renegociando el contrato con B.F.I.

*Procede, por ende, que se modifique parcialmente la decisión del Tribunal de Primera Instancia y se revoque la parte de su dictamen que anuló el contrato suscrito entre B.F.I. y el Municipio de Carolina. Sin embargo, confirmamos su conclusión de que en las circunstancias del caso de autos, el Municipio de Carolina tenía la responsabilidad primaria de recoger la basura en las escuelas públicas ubicadas en su jurisdicción.*

*Se dictará la sentencia correspondiente.*