Colón Birriel, Juez Ponente
*948 TEXTO COMPLETO DE LA SENTENCIA
I
Andrés Román Velázquez (en adelante el “apelante”), solicita la revocación de una Sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Arecibo (el “TPF), el 6 de diciembre de 2000 y archivada en los autos copia de su notificación el 22 de enero de 2001, en el caso Andrés Román Velázquez v. Andrés Román Hernández, caso civil Núm. CCPE1998-0166, sobre: desahucio. Mediante el dictamen se declaró Ha Lugar la intervención instada por Andrés Román Rosado (el “interventor”) en el Caso Civil Núm.: CPE1998-0166, sobre Desahucio, inicialmente comenzando por Marcia Velázquez Díaz (“Velázquez Díaz”), contra Andrés Román Hernández (en adelante el “apelado”). Se resolvió que el interventor debía de pagar a Velázquez Díaz la suma de $852.00, quien a su vez debía pagar al apelado la suma de $3,000.00 y, a su vez, éste debería pagar al interventor la suma de $1,500.00. El recurso fue presentado el 21 de febrero de 2001, a la 1:38 p.m., último día del término de treinta (30) días, dispuesto por ley para presentarlo.
Posteriormente, el 28 de febrero de 2001, vencido el término jurisdiccional para presentar el recurso, se recibió en la secretaría de nuestro Tribunal un escrito del apelante incluyendo una serie de documentos que no acompañó originalmente con su recurso. Adujo que “por error involuntario y ante la prisa de radicar dentro del término jurisdiccional el escrito de apelación” no había acompañado dichos documentos. Solicitó que de conformidad con la Regla 54.4(b)(5) y (6) de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, se unieran los referidos documentos al apéndice de su recurso. Los documentos le fueron devueltos por no haber incluido el arancel requerido de rentas internas por valor de un dólar ($1.00). Corregida la deficiencia respecto a los aranceles, los documentos adicionales se radicaron el 5 de marzo de 2001. Por su parte, el 9 de marzo de 2001, el interventor solicitó la desestimación del recurso por incumplimiento craso con nuestro Reglamento.
El 19 de marzo de 2001, notificada el 5 de abril de 2001, dictamos Sentencia desestimando el recurso por carecer de jurisdicción, por razón a que éste no se perfeccionó dentro del término jurisdiccional por falta de documentos esenciales en el apéndice. Inconforme con este dictamen, el 7 de mayo de 2001, el apelante presentó un recurso ante nuestro Tribunal Supremo (AC-2001-25). Así las cosas, el Tribunal Supremo, mediante opinión Per Curiam, acogió el recurso como uno de certiorari, por ser el apropiado, expidió el auto y revocó nuestra Sentencia, concluyendo que la desestimación del recurso había sido una sanción muy drástica, habida cuenta que los documentos omitidos en el apéndice no eran esenciales para adjudicar la controversia. Por último, devolvió el caso a este foro para que fuera atendido en los méritos. Román Velázquez v. Román Hernández, Op. de 24 de septiembre de 2002, 2002 J.T.S. 132.
Conforme al mandato, emitimos Resolución el 25 de octubre de 2002, notificada el 28 de octubre, a los fines de que el apelante presentara una exposición estipulada de la prueba o una exposición narrativa de la prueba conforme a las Reglas 19 ó 20 de nuestro Reglamento, 4 L.P.R.A. Ap. XXII-A, dentro del término de treinta (30) días, a partir de la notificación. Luego de un sinnúmero de trámites, el 10 de febrero de 2003, el apelante presentó una Moción Sometiendo Transcripción, la cual incluía tres partes correspondientes a las vistas celebradas el 13 de marzo de 2000, 16 de agosto de 2000 y 11 de septiembre de 2000. En Resolución de 10 de marzo de 2003, notificada el 18 de marzo, quedó aprobada la transcripción, toda vez que ésta no fue objetada por el interventor, ni por el apelado.
El 24 de enero de 2003, el Ledo. Juan E. Taboas Santiago nos solicitó ser relevado de la representación legal que ostentaba de Andrés Román Rosado (el “interventor”), entre otros, por: a) su alegado fallecimiento; b) de que el coapelado Andrés Román Hernández, portavoz de la alegada sucesión, no le había suministrado la *949 documentación necesaria para hacer la correspondiente sustitución de parte; y c) no habérsele pagado ciertos honorarios adeudados por el causante en los procedimientos ante instancia. En Resolución de 29 de enero de 2003 denegamos el relevo solicitado, en consideración, a la etapa en que se encontraban los procedimientos. Atendido nuevamente el asunto, mediante nuestra Resolución el 27 de mayo de 2003, expresamos: a) que la transcripción de los procedimientos había quedado debidamente aprobada; b) que el Ledo. Taboas Santiago, en representación del interventor, había presentado su alegato, no así el Ledo. Rafael Cardona Campos representante del apelado Andrés Román Hernández, no obstante los términos concedidos para ello; c) a pesar de haber transcurrido cuatro (4) meses desde la notificación de la muerte del interventor, concedimos cinco (5) días adicionales al Ledo. Jorge A. Vera Vélez y al Ledo. Rafael Cardona Campos, para hacer constar el hecho de su muerte; y d) transcurrido el término concedido sin haberse, expresado, el recurso seguiría tramitándose como originalmente fue presentado conforme a las disposiciones de la Regla 82 de nuestro Reglamento, 4 L.P. R.A. Ap. XXII-A.
Resolvemos con el beneficio de la comparecencia del apelante, del apelado-interventor y de las transcripciones de las vistas, pero sin tener el beneficio de la comparecencia del apelado Andrés Román Hernández, quien a pesar del término que le fuera concedido para presentar su alegato, no ha comparecido. Para una mejor comprensión, procede exponer, en lo pertinente, el trasfondo fáctico de lo acaecido.
II
El apelado y Velázquez Díaz contrajeron matrimonio el 6 de diciembre de 1969 en Arecibo, procreando tres hijos: Andrés, Alba Raquel y Oscar, todos de apellidos Román Velázquez. Cuando el apelado y Velázquez Díaz contrajeron matrimonio fueron a residir a la residencia del padre del primero, Andrés Román Rosado (el “interventor”) y de Hortensia Alvarez. Posteriormente, el interventor construyó otra residencia de cemento de veinte pies por veinte pies (20" x 20") detrás de su residencia, para que el apelado y Velázquez Díaz la vivieran.
Originalmente, la residencia consistía de dos cuartos dormitorios, sala, cocina, con letrina en la parte de atrás. Posteriormente y durante el matrimonio, el apelado construyó el balcón, una marquesina y otro cuarto. En esta obra se utilizaron $2,000 de un préstamo de $5,000 que obtuvo el apelado con la firma de su padre, el interventor. Los restantes $3,000 los utilizó para mudarse con su familia a Nueva Jersey donde residió y trabajó por un período de tiempo. Luego, cuando regresaron a Puerto Rico y el hijo mayor de la pareja, Andrés Román Velázquez comenzó la escuela, sustituyeron la letrina por un cuarto con inodoro y baño que se construyó poco antes de que la Sra. Velázquez Díaz comenzara a trabajar. La Sra. Velázquez Díaz fue ama de casa hasta el 1981, año en que comenzó a trabajar como ayudante de maestra en el Barrio Dominguito en Arecibo.
Posteriormente, se reparó el baño enchapándolo y poniéndole terrazo. Además, en el balcón se instalaron unos balaustres y se colocaron unas tejas. Estas reparaciones se hicieron entre los años 1981 a 1985. Los balaustres costaron dos dólares ($2) cada uno y las tejas costaron setenta y cinco centavos ($0.75) cada una. No se sabe cuántos balaustres y tejas se utilizaron para el proyecto, por lo que no se pudo determinar el monto total del costo de materiales. Los balaustres los instaló Aníbal Delgado; éste trabajó seis días cobrando veinticinco dólares ($25) diarios para un total de ciento cincuenta dólares ($150). El obrero que instaló las tejas trabajó tres (3) días a veinticinco dólares ($25) diarios para un total de setenta y cinco dólares ($75). La mano de obra entre los balaustres y las tejas montó a doscientos veinticinco dólares ($225). Esta obra fue realizada durante la vigencia del matrimonio.
El 15 de julio de 1988, el apelante y la Sra. Velázquez Díaz juramentaron una petición de divorcio por consentimiento mutuo en el caso RF88-1431 en el extinto Tribunal Superior, Sala de Arecibo. Hicieron constar, que durante el matrimonio adquirieron bienes gananciales, consistiendo de una casa enclavada en un solar privativo del apelante y no generaron deudas gananciales. Examinados al respecto y a la luz de lo estipulado en el caso de divorcio, el apelado y Velázquez Díaz, manifestaron tener conocimiento de que el solar en que enclavaba su residencia no era del apelado, sino que pertenecía al interventor. Además, explicaron que el *950 apelado lo único que quería era divorciarse y que no se fijó en lo que firmaba y que Velázquez Díaz indicó que había hecho algo malo. En sus propias palabras dijo “mala mía” cuando el Ledo. Juan E. Taboas la interrogó.
Posteriormente para el año 1997, Velázquez Díaz gastó novecientos dieciocho dólares ($918) en materiales usados para modernizar el baño, doscientos cincuenta dólares ($250) en la puerta del frente, ciento cuarenta y nueve dólares ($149) en una puerta francesa para la parte de atrás, ciento veinticinco dólares ($125) en la instalación de un abanico de techo, doscientos cincuenta dólares ($250) en pintura y ciento cincuenta dólares ($150) en la respectiva mano de obra para pintar. Lo anteriormente mencionado alcanzó un total de mil novecientos noventa y dos dólares ($1,992).
En tomo a la reparación del baño, hay que añadirle la mano de obra realizada por el obrero Juan Batista Ramírez por un total de trescientos sesenta dólares ($360), los cuales se desglosan a treinta dólares diarios ($30) por doce días. Al adicionar esta suma a la ya computada, nos da un total de dos mil trescientos cincuenta y dos dólares ($2,352).
El 24 de marzo de 1997, el apelado le pagó a Velázquez Díaz la suma de tres mil dólares ($3,000) como razón para el pago de “la compra de la casa, valorada en veinticinco mil dólares ($25,000)”.
El 6 de diciembre de 2000, notificada el 22 de enero de 2001, el TPI dictó Sentencia, como hemos mencionado, en la que dispuso:

“Por los fundamentos antes expuestos, se resuelve que Andrés Román Rosado deberá pagar a Marcia Velázquez Díaz la suma de $852.00 dólares [sic], Marcia Velázquez Díaz deberá pagar a Andrés Román Hernández la suma de $3,000 dólares [sic] y Andrés Román Hernández deberá pagar a Andrés Román Rosado la suma de $1,500 dólares [sic]. Se condena en costas a las partes demandantes y demandados a ser sufragadas en partes iguales y, por constituir el presente caso uno complejo en cuanto a reclamaciones, determinamos que no hay temeridad, por lo cual no se condena en costas de honorarios a ninguna de las partes. ”

Inconforme, el apelante alega la comisión de los siguientes errores:

“1) Incidió en error el Tribunal de Primera Instancia en su apreciación total de la prueba aportada por ambas partes.

2) Erró el Tribunal igualmente al no tomar en consideración que entre el demandado (apelado), Andrés Román Hernández y su esposa Marcia Velázquez Díaz existió una Sociedad Legal de Gananciales que duró desde 6 de diciembre de 1969 hasta el 2 de diciembre de 1988.

3) Igualmente al no tomar en consideración que existiendo la Sociedad Legal de Gananciales existe una presunción del estado ganancial que en forma alguna fue rebatida por la prueba.

4) En la misma línea, erró el Tribunal de Primera Instancia, en darle visos de comunidad de bienes a una construcción efectuada por la ex-esposa del demandando (apelado) con su propio dinero y en la cual para nada intervino el demandado (apelado).

5) Incidió en error el Tribunal de Primera Instancia al darle entero crédito a la prueba del interventor en forma parcializada.

6) Erró el Tribunal en su aplicación de la ley y estado actual del derecho, al determinar que la cónyuge, ama de casa, no aporta a la Sociedad Legal de Gananciales.

*951
7) Incidió en error el Tribunal de Primera Instancia al permitir la intervención en una causa que ya estaba adjudicada y tenía carácter de cosa juzgada o en su defecto estaba impedido por sentencia a un ataque colateral de la misma.

8) Incidió el Tribunal de Primera Instancia en error de derecho al permitir la intervención en acción que ya está terminada, es una de carácter sumario; gozaba ya de la defensa de cosa juzgada o impedimento colateral por sentencia y el interventor tenía en sus manos otros mecanismos de ley como la reivindicación.

9) Igualmente erró el Tribunal de Primera Instancia en su apreciación de la prueba, al no determinar que el interventor no podía ir en contra de sus propios actos.

10) Incidió en error craso de derecho el Tribunal de Primera Instancia al variar el “quántum” de la prueba requerida entre cónyuges o co-herederos y aquel requerido cuando se litigan derechos frente a terceros.

11) De la misma manera incidió en error de hecho y de derecho, al darle crédito a las manifestaciones del demandado, Andrés Román Hernández, quien en acción anterior de divorcio había reconocido la ganancialidad del bien objeto de este litigio que tiene al amparo de cosa juzgada y el cual tampoco podía ir contra sus propios actos.

12) Al dejar sin efecto un contrato de transacción reconocido por la ley y por la jurisprudencia habido entre el demandado Andrés Román Hernández y Marcia Velázquez Díaz y el cual obligaba a las partes en acción de divorcio por consentimiento mutuo; el Tribunal de Primera Instancia cometió error de hecho y de derecho. ”

III
La doctrina de cosa juzgada es una de las defensas afirmativas que "deberá" expresarse en una alegación precedente, según dispone la Regla 6.3 de Procedimiento Civil, 32 L.P.R.A Ap. III. El propósito de esta defensa es promover la finalidad de las controversias judiciales y evitar las continuas molestias a una parte con la presentación sucesiva de varios pleitos relacionados con el mismo asunto. Zambrana v. Tribunal Superior, 100 D.P.R. 179, 181 (1971).
Surte efecto cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final, con el resultado de que tal determinación es concluyente en el segundo pleito entre las mismas partes, aunque estén implicadas causas de acción distintas. A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. 753, 762 (1981). El efecto de cosa juzgada significa que las partes tienen que considerar los puntos discutidos como definitivamente resueltos, y no pueden volver nuevamente sobre éstos. Igaravidez v. Ricci, 147 D.P.R. 1 (1998). La doctrina de cosa juzgada y sus modalidades persiguen como propósito proteger a los litigantes de las molestias que supone litigar en repetidas ocasiones la misma controversia, promover la economía judicial y administrativa al evitar litigios innecesarios y evitar decisiones inconsistentes. Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212, 218-219 (1992).
Por su parte, en lo pertinente, el Código Civil de Puerto Rico dispone en su Art. 1024, 31 L.P.R.A. § 3343, que:

"[...]

Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.

*952
[...]

Se ha señalado que son varios los criterios sugeridos para determinar qué es una causa de acción para propósitos de la doctrina de cosa juzgada, entre estos; a) si el mismo derecho ha sido infringido por la misma violación; b) si hay una identidad tal que una sentencia diferente en la segunda acción destruiría o afectaría derechos e intereses establecidos por la primera sentencia; c) identidad de fundamentos; y d) si la misma evidencia sostendría ambas sentencias.” Mercado Riera v. Mercado Riera, 100 D.P.R. 940, 951 (1972).
El efecto de la doctrina de cosa juzgada es que la sentencia dictada en un pleito anterior impide que se litigue en un pleito posterior entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas y aquéllas que pudieron ser litigadas y adjudicadas con propiedad en la acción anterior. Worldwide Food Dis., Inc v. Colón, 133 D.P.R. 827, 833 (1993); Rodríguez Rodríguez v. Colberg Gomas, 131 D.P.R. 212, 219 (1992); Banco de la Vivienda v. Carlo Ortiz, 130 D.P.R. 730, 739 (1992); Págan Hérnandez, 107 D.P.R. a las págs. 732-733. Así pues, para que las doctrinas de cosa juzgada e impedimento colateral por sentencia apliquen a un caso posterior, se requiere que previamente exista una sentencia final y firme que adjudique la reclamación en los méritos y que haya sido dictada con jurisdicción por el foro pertinente. P.R.T.C. v. Unión Indep. Emp. Telefónicos, 131 D.P.R. 171, 193 (1992).
A tenor con la doctrina de cosa juzgada, en A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. 753, 758-761 (1981), el Tribunal Supremo evaluó la doctrina del impedimento colateral por sentencia. El impedimento colateral por sentencia es una modalidad de la defensa de cosa juzgada que consiste en alegar que un hecho esencial, o unos hechos esenciales, para el pronunciamiento de una sentencia, ya ha sido adjudicado definitivamente en un primer litigio entre las partes, Fatach v. Triple S, Inc., 147 D.P.R. 882, 889 (1999); Acevedo v. Western Digital Caribe, Inc. 140 D.P.R. 452, 464 (1996); Pereira v. Hernández, 83 D.P.R. 160, 166 (1961).
Además, el impedimento colateral por sentencia tiene dos modalidades: (a) defensiva, y (b) ofensiva. La modalidad defensiva es una defensa que el demandado plantea para impedir la litigación de un asunto ya planteado y perdido por el demandante en un pleito anterior frente a otra parte. La modalidad ofensiva es una defensa que el demandante plantea para impedir que el demandado vuelva a litigar aquellos asuntos previamente litigados y perdidos frente a otra parte. Fatach, 147 D.P.R. a las págs. 888-889.
El contrato de transacción suscrito por el apelado y Velázquez Díaz al divorciarse por consentimiento mutuo, no puede considerarse cosa juzgada bajo los hechos del presente caso, por razón de que el apelado no podía ceder la participación de un inmueble que no le pertenecía. La única persona que tenía facultad de donar el inmueble era el interventor, dueño del terreno y de la propiedad; por lo cual el apelado no va contra sus propios actos, por razón de que nunca tuvo la facultad de donar. El apelado no podía darle carácter ganancial a una propiedad de su padre solamente mediante una expresión en un contrato.
El interventor resulta ser una parte indispensable para que cualquier determinación respecto a la propiedad pudiera ser considerada cosa juzgada. Esto debido a que una parte indispensable se define como "aquella persona cuyos derechos o intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada estando esa persona ausente del litigio". Fred Reyes v. E.L.A., Op. de 24 de marzo de 2000, 2000 J.T.S. 62, a la pág. 895. Véase también, Cepeda Torres v. García Ortiz, 132 D.P.R. 698, 704 (1993). La parte indispensable es aquélla que tiene tal interés en la controversia que no puede dictarse una sentencia sin que sus derechos se vean afectados. Por ello, una sentencia dictada sin incluir a una parte indispensable en el pleito, no sería válida. Fred Reyes, 2000 J.T.S. 62, a la pág. 895; Unisys v. Ramallo Brothers, 128 D.P.R. 842, 859 (1991).
Nuestro Tribunal Supremo ha señalado que el propósito de la Regla 16.1 de Procedimiento Civil, 32 L.P.R. *953 A. Ap. III, es proteger a las personas ausentes de los posibles efectos perjudiciales de la resolución del caso sin su presencia, y así evitar multiplicidad de pleitos mediante un remedio efectivo. Véase: Sánchez Encarnación v. Sánchez Brunet, Opinión de 13 de julio de 2001, 2001 J.T.S. 112, a la pág. 1573; Fred Reyes v. E.L.A., 2000 J.T.S. 62, a las págs. 894-895; Metropolitan Marble Corp. v. Pichardo, 145 D.P.R. 607 (1998); Galarza Rivera v. Mercado Pagán, 139 D.P.R. 619, 639 (1995); Acosta Quiñones v. Matos Rodríguez, 135 D.P.R. 623, 627-628 (1994); Unysis v. Ramallo Brothers, 128 D.P.R. 842, 859 (1991); Granados v. Rodríguez Estrada III, 124 D.P.R. 593, 603-604 (1989). Como sus derechos e intereses podrían quedar afectados al momento de emitir la sentencia o resolución por no estar presente en el litigio, esa "parte indispensable" tiene que ser traída al pleito. Vencedor Dev. Corp. v. Aut. de Carreteras, 136 D.P.R. 456, 460 (1995); Rodríguez Rodríguez v. Moreno Rodríguez, 135 D.P.R. 623, 627-628 (1994); Torres v. Alcalde Mun. de Carolina, 135 D.P.R. 108, 121 (1994); Cepeda Torres, 132 D.P.R. a la pág. 704.
El planteamiento de parte indispensable es un asunto de índole tan importante y vital que el mismo puede presentarse en apelación por primera vez o incluso suscitarse por el tribunal sua sponte. Hernández Agosto v. López Nieves, 114 D.P.R. 601, 603 (1983).
La Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, se inspira en dos (2) axiomas importantes. Estos son: la protección constitucional que impide que una persona sea privada de la libertad y propiedad sin el debido proceso de ley, Artículo III, Sección 7, Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R. A.; y la necesidad de incluir a una parte indispensable, de modo que el decreto judicial emitido sea uno completo. Véase: Fred Reyes, 2000 J.T.S. 62, a la pág. 895; Cepeda Torres, 132 D.P.R. a la pág. 704.
La acumulación obligatoria de partes no debe ser el producto de una determinación basada en categorías abstractas, desvinculada del contexto particular de cada caso, sino el resultado de "consideraciones pragmáticas, de la evaluación de los intereses envueltos, lo que obliga a distinguir entre varios géneros de casos". Hernández Agosto, 114 D.P.R. a la pág. 606. Véase también, Municipio de Ponce v. Autoridad de Carreteras, Opinión de 29 de diciembre de 2000, 2001 J.T.S. 3, a la pág. 653. Se exige una evaluación jurídica de factores tales como tiempo, lugar, modo, alegaciones, prueba, clase de derecho, intereses en conflicto, resultado y formalidad. J. A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo I, Publicaciones JTS, 2000, a la pág. 372; Sánchez Encarnación, 2001 J.T.S. 112, a las págs. 1573-1574.
En Hernández Agosto, 114 D.P.R. a las págs. 607, 610-611, el Tribunal Supremo examinó la Regla 16 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, y estableció que "interés común" no es cualquier interés en el pleito, sino un interés de tal orden que impida la confección de un decreto sin afectarlo. Por su parte, la frase "sin cuya presencia no pueda adjudicarse la controversia" está relacionada con la "indispensabilidad" de una parte. Hernández Agosto, 114 D.P.R. a las págs. 607-608; véase además, Municipio de Ponce, 2001 J.T.S. 3, a la pág. 653.
No se cometieron los errores séptimo, undécimo y duodécimo.
El derecho de accesión respecto de los bienes inmuebles, según dispone el Código Civil en su Artículo 294, 31 L.P.R.A. § 1161, indica que: "lo edificado, plantado o sembrado en predios ajenos y las mejoras o reparaciones hechas en ellos, pertenecen al dueño de los mismos con sujeción a lo que se dispone en las secciones siguientes"-, por otro lado, el primer párrafo del Artículo 297, 31 L.P.R.A. § 1164, indica que:

“El dueño del terreno en que se sembrare o plantare de buena fe, tendrá derecho a hacer suya la siembra o plantación, previa la indemnización establecida en las sees. 1468 y 1469 de este título, o a obligar al que plantó, a pagar el precio del terreno, y al que sembró, la renta correspondiente. ”

Nuestro Tribunal Supremo ha establecido, reiteradamente, que la demanda de accesión "tiene dualidad de *954 propósitos: el primero, obtener el título de dominio sobre el inmueble, y el segundo, adquirir la posesión (mediante el desalojo del anterior dueño)". Toro v. Mojica, 79 D.P.R. 630, 633 (1956); García v. Stella, 69 D.P.R. 977, 979 (1949); Rodríguez v. Corte, 68 D.P.R. 978, 981 (1948).
Nuestro Tribunal Supremo delimitó el alcance de los conceptos "mala fe" y "buena fe" en el contexto de la edificación en suelo ajeno. Constructor de mala fe es aquél que edifica una estructura en un predio sin autorización alguna del dueño y a sabiendas de que el terreno no le pertenecía. Mientras que el edificante de buena fe tiene que haber construido bajo la creencia fundada de que el terreno era suyo, o mediante autorización del dueño, C.R.U.V. v. Román, 111 D.P.R. 318 (1971).
El Código Civil nuestro y su contraparte, el Código Civil Español, no definen lo que es un edificante de buena fe, pero sí definen lo que es un poseedor de buena fe. El Artículo 293, 31 L.P.R.A. § 1146, lee de la siguiente manera:

“Es poseedor de buena fe el que posee como propietario por virtud de un título suficiente en sus términos y condiciones para transferir la propiedad y cuyos defectos son ignorados por el poseedor. La posesión de buena fe cesa desde el momento en que el poseedor conoce por sí mismo los defectos del título, o mediante el juicio que estableciere el propietario de la cosa para reivindicarla. ”

A su vez, el artículo 363, 31 L.P.R.A. § 1424, dispone que un poseedor de buena fe es el que ignora que en su título o modo de adquirir exista un vicio que lo invalida. Además, la buena fe siempre se presumirá y quien impute lo contrario, deberá probarlo, Art. 364 del Código Civil, 31 L.P.R.A. § 1425.
El Tribunal Supremo, en Cedo v. Laboy, 79 D.P.R. 788, 791-792 (1956), extendió la aplicación de las disposiciones del Código referente a los poseedores de buena o mala fe a los edificantes en suelo ajeno.
Además de la buena fe, los otros dos principios que gobiernan la accesión por incorporación son el principio de que lo accesorio sigue a lo principal y el principio de que el suelo es siempre la cosa principal. Estos parten de la premisa de la unión inseparable e indivisible de dos o más cosas y que necesariamente una debe estar subordinada a la otra.
Habiendo definido los principios que regulan la accesión por incorporación, es de rigor enumerar los derechos y obligaciones que le asisten a los edificantes en suelo ajeno. Dicha determinación dependerá esencialmente de si son edificantes de buena o mala fe. Si es edificante de buena fe, sus derechos están estatuidos en el Artículo 297 del Código Civil, como mencionáramos anteriormente. En este escenario, lo medular es precisar si el que edificó sabía que lo hacía en suelo ajeno o no.
Como surge claramente de la lectura del Artículo 293, 31 L.P.R.A. § 1424, los derechos que éste concede al edificante en propiedad inmueble ajena se activan únicamente cuando éste haya edificado en dicha propiedad mediante título que respalde el convencimiento de haber edificado conforme al derecho, excepto en aquellos casos en que haya autorización del dueño del terreno.
El apelado y Velázquez Díaz construyeron con autorización del interventor. Por lo tanto, actuó correctamente el TPI al concluir que fueron edificantes de buena fe y darle los créditos correspondientes. El interventor no va contra sus propios actos al requerir el terreno y la propiedad, después que todos los gastos incurridos por el edificante de buena fe sean reembolsados. En consideración a lo cual, no se cometió ni el octavo ni el noveno error.
En la Sentencia apelada, el TPI concluye, en lo pertinente, que:

*955
“Al inventariar los bienes que podría tener la sociedad legal de gananciales, conforme a la prueba desfilada en el presente caso, a la fecha de su liquidación, tenemos que la casa que alega es ganancial la parte demandante en este caso, incluyendo a Doña Marcia Velázquez Díaz, resulta no ser ganancial, ya que hemos resuelto la evidencia conflictiva al respecto a favor de lo que entendemos es la realidad; que la casa en cuestión fue construida por el interventor Andrés Román Rosado. En cuanto a la mejora de la marquesina, el cuarto y el cuarto de baño, éstas habrían sido mejoras hechas por la sociedad legal de gananciales de haberse pagado el préstamo de $5,000.00 dólares [sic] que tomó Andrés Román Hernández con la firma de su padre Andrés Román Rosado. Sin embargo, al no haberse pagado un sólo plazo de dicho préstamo y haberlo sufragado en su totalidad Andrés Román Rosado, resulta que la sociedad legal de gananciales tiene una deuda con Andrés Román Rosado de $5,000.00 de los cuales se usaron $2,000.00 en estas mejoras y $3,000.00 en trasladar la familia compuesta de Andrés Román Hernández, Marcia Velázquez Díaz e hijos al Estado de New Jersey [sic] en donde esta familia residió un tiempo y trabajó. Estos dineros nunca han sido pagados y constituyen una deuda de la sociedad legal de gananciales. Lo mismo ocurre con la instalación de las tejas y balaustres que fueron instalados en este mismo tiempo utilizando los mismos dineros y, de todas maneras, caerían también dentro de la cantidad que le debe la sociedad legal de gananciales a Andrés Román Rosado. En resumen, resolvemos que la sociedad legal de gananciales que componían Andrés Román Hernández y Marcia Velázquez Díaz deben a Andrés Román Rosado la suma de $5,000.00 de los cuales no tienen que pagar la suma de $2,000.00, puesto que están empleados y físicamente unidos a la casa que es propiedad de Andrés Román Rosado reduciéndose dicha deuda a la suma de $3,000.00 dólares [sic].

También se realizaron unas mejoras que sufragó, luego del divorcio, Marcia Velázquez Díaz que detallamos antes en nuestras Determinaciones de Hechos y que montaron en total a $2,352.00 dólares [sic]. Como dichas mejoras están físicamente unidas a la casa propiedad de Andrés Román Rosado, estos $2,352.00 dólares [sic] los debería Andrés Román Rosado a Marcia Velázquez Díaz. Considerando todo lo anterior, a Andrés Román Rosado se le deben $3,000.00 dólares [sic] por la sociedad legal de gananciales que se está liquidando y por lo cual debe Andrés Román Hernández la suma de $1,500.00 y Marcia Velázquez Díaz la suma de $1,500.00 dólares [sic]. En base a lo anterior, el dueño de la propiedad que se beneficia con las mejoras sufragadas por Doña Marcia Velázquez Díaz, Andrés Román Rosado debe la suma de $852.00 dólares [sic] a Marcia Velázquez Díaz al descontar la suma de $1,500.00 dólares [sic] que debe a Andrés Román Rosado.

Por otro lado Marcia Velázquez Díaz debe a Andrés Román Hernández la suma de $3,000.00 dólares [sic] que cobró indebidamente, conforme se han determinado los hechos antes. ”

Es doctrina claramente establecida que las determinaciones de hechos y la apreciación de la prueba del tribunal sentenciador merecen gran deferencia y respecto a los foros apelativos. Corresponde a instancia aquilatar la prueba testifical y dirimir credibilidad. Sin lugar a dudas, el juez que vio y oyó la pmeba es quien está en mejor posición para creerla o no creerla. Un tribunal apelativo sólo intervendrá con las determinaciones de hecho y la adjudicación de credibilidad del Tribunal de Primera Instancia cuando exista pasión, prejuicio o error manifiesto. López Vicil v. ITT Intermedia, Inc., 143 D.P.R. 574 (1997); Quiñones López v. Manzano Pozas, 141 D.P.R. 139 (1996); Pueblo v. Maisonave Rodríguez, 129 D.P.R. 49 (1991); Pueblo v. Rivera Robles, 121 D.P.R. 358(1988).
Todas las conclusiones indicada por el TPI mencionadas anteriormente están sostenidas por las transcripciones de las vistas presentadas ante este tribunal. En cuanto al estado ganancial, es claro que lo único ganancial es este caso es la deuda de cinco mil dólares ($5,000). El TPI determinó con exactitud de acuerdo a la prueba presentada los gastos, las fechas de los mismos, quién los hizo y a quién le correspondía cada crédito. En ningún momento, el TPI insinuó o indicó que el hecho de que Velázquez Díaz fuera ama de casa afectara su participación en la sociedad legal de gananciales. Por lo anterior, no se cometieron los errores del primero al sexto.
*956 En mérito a lo expuesto, confirmamos la Sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Arecibo (el “TPF), el 6 de diciembre de 2000 y archivada en los autos copia de su notificación el 22 de enero de 2001, Andrés Román Velázquez v. Andrés Román Hernández-
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General