Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| JUAN R. RODRÍGUEZ, CARMEN PRADO SANTAMARÍA<br><br>Demandantes-Peticionarios<br><br>v.<br><br>NICOLE M. SÁNCHEZ CABÁN, JUAN R. RODRÍGUEZ PRADO<br><br>Demandados-Recurridos | KLAN202300739 | *APELACIÓN* **ACOGIDA COMO** *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala de Familia y Menores de Bayamón<br><br>Civil Núm. DCU2015-0565<br><br>SALA: 4005<br><br>SOBRE: CUSTODIA |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de octubre de 2023.

Comparecen ante nos las Partes Peticionarias, el Sr. Juan R. Rodríguez Espada y la Sra. Carmen Prado Santana (en adelante, "Partes Peticionarias"), para solicitarnos que se revoque la *Resolución Enmendada* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 15 de mayo de 2023 y notificada el 20 de julio de 2023, en la cual declaró No Ha Lugar la solicitud de relaciones abuelo filiales.

Acogemos el recurso de epígrafe como una petición de *Certiorari* por ser el recurso adecuado.[1] Sin embargo, este mantendrá la misma identificación alfanumérica correspondiente a una apelación.

---

[1] El término "sentencia" incluye cualquier determinación del Tribunal de Primera Instancia que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse. Solo debe quedar pendiente su ejecución. Regla 42.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.1. Por otro lado, el término "resolución" incluye cualquier dictamen que pone fin a un incidente dentro del proceso judicial. *Id.*

Por los fundamentos que exponemos a continuación, se expide el auto de *certiorari* y se confirma la determinación recurrida.

I

Fruto de la relación entre los señores Nicole M. Sánchez Cabán y Juan R. Rodríguez Prado, ambos menores de edad en aquel entonces, nació el 19 de mayo de 2009 en Puerto Rico, la menor (JCRS). Al momento del alumbramiento, la Sra. Sánchez Cabán contaba con catorce (14) años. Los abuelos paternos, el Sr. Juan R. Rodríguez Espada y la Sra. Carmen Prado Santana, asumieron la custodia física de su nieta cuando esta tenía dos meses hasta el 12 de noviembre de 2019, cuando la menor tenía diez años.

El presente caso tuvo su inicio en el Tribunal de Primera Instancia, Sala Superior de Arecibo, el 11 de marzo de 2011, cuando la Parte Peticionaria radicó una demanda para solicitar la custodia de la menor JCRS. El 19 de agosto de 2015, el caso fue trasladado al Tribunal de Primera Instancia, Sala de Bayamón bajo la designación alfanumérica DCU2015-0565. Luego de varios trámites procesales, el 22 de enero de 2020, el Tribunal, mediante *Resolución*, ordenó que la custodia fuera ostentada por la Parte Recurrida, Sra. Sánchez Cabán. Posteriormente, el Tribunal acogió las recomendaciones ofrecidas por la Unidad de Trabajo Social, que propuso que las relaciones entre los abuelos paternos y la menor se llevaran a cabo mediante un tratamiento terapéutico. Se ordenó a la Parte Peticionaria y a la menor cumplir con un plan de terapia psicológica, de manera individual. La Dra. Venus Hernández estuvo a cargo de la terapia psicológica de la abuela mientras que la menor fue atendida por la Dra. Norma Gómez Soto, quien anteriormente había sido contratada por la abuela paterna.

A la luz de lo anterior, la Dra. Venus Hernández expresó que la Sra. Carmen Prado Santamaría había cumplido con lo requerido por el tribunal y que estaba lista para comenzar la relación abuelo

filial. Sin embargo, la menor demostró resistencia a restablecer la conexión con su abuela paterna. Cónsono con ello, el Tribunal instruyó a la Trabajadora Social, la Sra. Karim Rosado Raíces, que llevara a cabo una discusión de caso para discutir sus hallazgos y recomendaciones y entrevistara a la menor para conocer su punto de vista. El tribunal tuvo la oportunidad de escuchar a la menor el 4 de octubre de 2022.

La trabajadora social presentó su Informe Social el 31 de mayo de 2022, en el cual recomendó que las relaciones abuelo filiales se suspendieran en atención al interés óptimo de la menor. Esta conclusión se tomó considerando los sentimientos de JCRS y la recomendación de su terapista. Del informe previamente mencionado, se desprende el resultado de las entrevistas realizadas a ambas psicólogas y la menor. La menor a sus trece (13) años, le manifestó a la Trabajadora Social que estaba "agotada de estar en el tribunal y de todo lo relacionado con la familia de su padre [...] pero mi abuela no va a parar".[2] La menor señaló que su abuela le mintió acerca de su madre y que constantemente la llevaba a hospitales para personas con problemas mentales y que desde que está con su mamá no ha tenido que ir. También le pidió a la Trabajadora Social que no la hiciera volver a ver a su abuela. La menor verbalizó que no desea estar cerca de ella, que espera que respeten su deseo de no verla y que se encuentra feliz con su madre.

Inconforme con las recomendaciones, la Parte Peticionaria solicitó impugnar el Informe Social y, el 3 de mayo de 2023, el Tribunal celebró la vista en sus méritos. En esta vista, testificó la Trabajadora Social del Tribunal, la Sra. Karim Rosado Raíces, y la Trabajadora Social, María Deniz Ortiz Díaz, como perito de impugnación de la Parte Peticionaria. Del testimonio de la Sra.

---

[2] Véase apéndice del recurso KLAN202300739, pág. 6.

Karim Rosado Raíces surge que la menor prefiere quedarse con su madre y que no sabe en qué contexto la abuela la llevaba a hospitales. De igual forma, la menor manifestó que se liberó al hablar con su terapista. También hizo referencia a actos de maltrato por parte de su abuela, pero no quiso profundizar sobre estos. La Sra. Rosado Raíces no encontró indicios de que la menor estuviera siendo manipulada.

La Trabajadora Social del Tribunal mencionó que la menor tenía un vasto conocimiento de los detalles del caso y que dicha información no debía ser compartida. Por último, esta entiende que no se debe forzar a la menor a sostener una relación con sus abuelos.

La Dra. Venus Hernández le expresó a la Sra. Rosado Raíces que la abuela se encuentra en buen estado, que le realizaron varias evaluaciones y que la Dra. Gómez se inventó una excusa para que no se den las relaciones abuelo filiales.[3] La Trabajadora Social del Tribunal reconoce que la menor JCRS vivió gran parte de su vida con sus abuelos y que, en algún momento, experimentó desestabilización, pero actualmente se encuentra bien. La Dra. Gómez entiende que en este momento no es apropiado fomentar las relaciones abuelo filiales. Es importante destacar que, aunque no se entrevistó al abuelo y la menor no expresó ningún comentario negativo sobre él, la suspensión de las relaciones involucra a ambos.

La Sra. Rosado Raíces señaló que era consciente que quien contrató a la Dra. Gómez para que se le brindaran terapias psicológicas a la menor fue la Parte Peticionaria para que le proveyera servicios a JCRS. Inicialmente, la Dra. Gómez sugirió que se restablecieran las relaciones entre los abuelos y la nieta, pero posteriormente cambió de opinión, lo que finalmente desencadenó

---

[3] Véase apéndice del recurso KLAN202300739, pág. 7.

en una queja ética por parte de la Parte Peticionaria, Sra. Carmen Prado Santamaria, con fecha del 24 de noviembre de 2019.

Indistintamente de lo anterior, el 19 de enero de 2021, el Tribunal confirmó que ella siga siendo la terapeuta de la menor JCRS. Mas adelante, la abuela solicitó nuevamente que la Dra. Gómez Soto no continuara ofreciendo sus servicios a la menor. No obstante, el 29 de marzo de 2021, el foro primario denegó la petición de la Parte Peticionaria manteniendo el tratamiento de la menor a cargo de ésta. Cabe destacar que, aunque se alegó que la Dra. Gómez era terapista de la abuela y de la menor, surge del expediente que fue contratada exclusivamente para proporcionar terapias a JCRS.

El 22 de julio de 2022, los Apelantes presentaron una moción al Tribunal en la que se indicaba que la Junta de Examinadores de Psicólogos de Puerto Rico recomendó que se presentara una querella formal contra la Dra. Gómez Soto. Sin embargo, la recomendación de querella formal no le impide seguir desempeñando su función de terapista. La Dra. Ortiz Díaz, concluyó que la Dra. Gómez Soto no debió haber continuado brindando sus servicios a la menor. Así mismo, recomendó que las relaciones abuelo filiales se llevaran a cabo.

En la vista de impugnación, la Parte Peticionaria presentó a la Dra. María D. Ortiz Díaz, la cual fue cualificada como perito en trabajo social. Esta presentó un informe de impugnación con fecha del 11 de febrero de 2023. De acuerdo con su testimonio, se desprende que su razón para intervenir es evaluar el informe social de la Trabajadora Social del Tribunal, con el objetivo de verificar si la intervención se llevó a cabo siguiendo las guías y estándares acordados por la comunidad profesional en el ámbito de la evaluación relaciones familiares. La Dra. Ortiz Díaz utilizó el método conocido como "Meta-Análisis", el cual implica revisar la

documentación sin entrevistar a las partes. Destaca que las preferencias de los menores no debe ser el único factor para considerar al recomendar las relaciones abuelo filiales y que se debe tomar en cuenta la madurez de la menor.[4] **Aclaramos que esta no entrevistó a la menor**. Así mismo, señaló que los primeros cinco (5) años de la vida de un ser humano son esenciales y que la menor pasó estos con su abuela. Indicó que no se justifica la suspensión de la relación abuelo filial. Formuló dos preguntas que, a su entender, son relevantes: 1) ¿Qué pasó que mis abuelos dejaron de verme?; y 2) ¿Cuál es el rol de los abuelos en este caso?[5]

De otro lado, es esencial destacar el rol e interés del padre de la menor, el Sr. Juan R. Rodríguez Prado, en este caso. En un comienzo, el Sr. Rodríguez Prado solicitó que se establecieran las relaciones paternofiliales con la menor JCRS. Mas adelante, el 28 de diciembre de 2021, informó a la Unidad Social que no tenía interés en continuar con dicha solicitud. El 31 de enero de 2022, enunció que interesaba continuar con el caso. El 14 de febrero de 2022, el Tribunal le ordenó que contratara un trabajador social para la preparación de un informe social de su hogar en Estados Unidos. Pese a ello, el Sr. Rodríguez Prado no cumplió con el mandato. Ulteriormente, el 30 de junio de 2022, expresó su voluntad de desistir de la solicitud.

El 12 de noviembre de 2019, el Tribunal de Primera Instancia celebró vista en la cual se ordenó el cambio de custodia a favor de la madre, la Sra. Nicole M. Sánchez Cabán. Asimismo, el 22 de enero de 2020, el Tribunal emitió una *Resolución* estableciendo el cambio de custodia y paralizando las relaciones abuelo filiales hasta que la menor cumpliera con su tratamiento y estuviese preparada para reanudar las relaciones abuelo filiales. Pasado unos trámites

---

[4] Véase apéndice del recurso KLAN202300739, pág. 8.
[5] *Id.*, pág. 9.

procesales, el foro primario emitió una *Resolución Enmendada* para incorporar determinaciones adicionales, a solicitud de parte.

Inconforme con lo resuelto en la vista de impugnación, el 21 de agosto de 2023, la Parte Peticionaria acudió a este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

A. *Erró el Honorable Tribunal en realizar determinaciones de hecho y conclusiones de derecho, bajo criterios subjetivos de la Juez y no sostenidos en la evidencia presentada, ni el expediente judicial.*

B. *Erró el Honorable Tribunal al aplicar de manera retroactiva las disposiciones del Código Civil de 2020, habiendo sido este caso, radicado y tramitado bajo el Código de 1930.*

C. *Erró el Honorable Tribunal al no permitir a la parte apelante, realizar evaluación a la menor por un tercero imparcial, para demostrar la importancia y/o necesidad de la relación abuelo filial solicitada por quienes fueron los padres de esta durante casi toda su vida.*

D. *Erró el Honorable Tribunal al no tomar en consideración que los abuelos paternos, en el presente caso fueron los únicos custodios de la menor los primeros 10 años de su vida (teniendo al presente 14 años de edad)*

E. *Erró el Honorable Tribunal al determinar que no se ofreció evidencia del beneficio, importancia y/o necesidad de las relaciones abuelo filiales solicitadas, cuando surge del propio informe pericial de la parte demandante apelante entrado en evidencia.*

F. *Erró el Honorable Tribunal al tomar en consideración la opinión de la menor, a pesar de que entendió se le debe explicar a esta la razón legal para que fuera a hospitales psiquiátricos y a pesar de que sus alegaciones de maltrato sobre los abuelos han sido investigadas y descartadas por el Departamento de la Familia*

G. *Erró el Honorable Tribunal, al negar al Sr. Juan Rodríguez Espada relación abuelo filial, pese a que nunca se pasó prueba de que no se pudiera dar la misma y de la misma Resolución, surge que la menor no hizo alegación negativa sobre este.*

H. *Erró el Honorable Tribunal, al mantener como único profesional con contacto con la menor a la Dra. Gómez, sin tomar la solicitud del padre con patria potestad, en consideración al proceso disciplinario en curso y a las notificaciones sobre violaciones al código de ética de los psicólogos en el presente caso.*

*I. Erró el Honorable Tribunal en fundar su Resolución en razonamientos subjetivos y en asumir alegadas posiciones del padre sin que se pasara prueba sobre ello.*

*J. Erró el Honorable Tribunal en cuestionar la opinión profesional de la perito, Dra. Venus Hernández al no entrevistar a la menor cuando fue el mismo tribunal, quien negó tal derecho.*

II

## A. *Certiorari*

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido.[6] La Regla 52.1 de Procedimiento Civil[7] establece los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones sobre el referido recurso para la revisión de resoluciones y órdenes interlocutorias dictadas por el Tribunal de Primera Instancia.[8] En lo pertinente, la Regla 52.1, *supra*, dispone lo siguiente:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

32 LPRA Ap. V, R. 52.1

---

[6] *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, 212 DPR ___ (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012).
[7] 32 LPRA Ap. V, R. 52.1.
[8] *Id.*; *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 709 (2019).

Por otra parte, la Regla 52.2(b)[9] establece los términos y efectos de la presentación de un recurso de *certiorari*:

(b) *Recurso de "certiorari".* Los recursos de *certiorari* al Tribunal de Apelaciones para revisar las resoluciones finales en procedimientos de jurisdicción voluntaria [...] deberán ser presentados dentro del término jurisdiccional de treinta (30) días contados desde el archivo en autos de copia de la notificación de la sentencia o resolución recurrida.

Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia [...] deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari.*

En aquellos casos que mediante recurso de *certiorari* se paralicen los procesos ante el Tribunal de Primera Instancia, el Tribunal de Apelaciones deberá resolver la controversia presentada ante sí dentro de los sesenta (60) días siguientes a que las partes concernidas se hayan expresado.

32 LPRA Ap. V, 52.2(b)

La discreción del tribunal revisor no debe abstraerse del resto del Derecho, y por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera.[10] Así pues, la discreción judicial para expedir o no el auto de *certiorari* no ocurre en un vacío ni en ausencia de parámetros.[11] Cónsono con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones[12] orienta la función del tribunal intermedio para ejercer sabiamente su facultad discrecional y establece los criterios que debe considerar al determinar si procede o no expedir un auto de *certiorari.*[13] La referida regla dispone lo siguiente:

---

[9] 32 LPRA Ap. V, 52.2(b).
[10] *Torres González v. Zaragosa Meléndez,* 211 DPR ___ (2023); *Mun. Caguas v. JRO Construction, supra,* 712; *IG Builders et al. v. BBVAPR, supra,* 338.
[11] *Id.*
[12] 4 LPRA Ap. XXII-B, R. 40.
[13] *Torres González v. Zaragosa Meléndez, supra*; *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc., supra*; *Mun. Caguas v. JRO Construction, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra,* págs. 404-405; *IG Builders et al. v. BBVAPR, supra,* págs. 338-339.

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cabe precisar que el recurso de *certiorari* es un recurso extraordinario discrecional que debe ser utilizado con cautela y solamente por razones de peso.[14] Es por ello que los tribunales revisores deben limitarse a aquellos casos en que la ley no provee un remedio adecuado para corregir el error señalado.[15] Nuestro ordenamiento jurídico ha establecido que el tribunal revisor sólo intervendrá con las facultades discrecionales de los foros primarios en circunstancias extremas y en donde se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[16]

---

[14] *Pueblo v. Díaz De León*, 176 DPR 913, 918 (2009).
[15] *Id.*
[16] *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, *supra*; *Cruz Flores et al.*, 210 DPR 465, 497 (2022); *Rivera y otros v. Banco Popular*, 152 DPR 140, 155 (2000).

**B.** *Relaciones Abuelo Filiales*

El Tribunal Supremo de Estados Unidos le ha reconocido a los progenitores el derecho fundamental de tomar decisiones relativas al cuidado, crianza y custodia de sus hijos. Este derecho se encuentra respaldado por las constituciones de Puerto Rico y de Estados Unidos. *Troxel v. Granville*, 530 US 57, 66 (2000); *Rexach v. Ramírez*, 162 DPR 130, 148 (2004). La Decimocuarta Enmienda provee una protección particular a los intereses libertarios de los individuos frente a la interferencia indebida por parte del gobierno. Emda. XIV, Const. EE. UU., LPRA, Tomo 1 ed. 2016, pág. 198. El derecho constitucional de los padres y madres se ha ubicado dentro del componente sustantivo de esta enmienda. Estas prerrogativas también han sido evaluadas desde el marco del derecho a la intimidad, el cual tiene raíces constitucionales. "Toda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar". Constitución del Estado Libre Asociado, Art. II, § 8; *Rexach v. Ramírez, supra*, pág. 143.

En Puerto Rico las relaciones familiares están revestidas de un alto interés público. *Martínez v. McDougal*, 133 DPR 228, 231 (1993). El derecho de los progenitores a tomar decisiones sobre sus hijos se encuentra dentro del concepto de patria potestad. *Galarza v. Mercado*, 139 DPR 619, 641 (1995). La patria potestad consiste en la totalidad de deberes y derechos que corresponden a los progenitores sobre la persona y los bienes de los hijos desde el momento de su nacimiento hasta que alcanzan su mayoría de edad. 31 LPRA § 7332. Entre sus obligaciones se encuentra el velar por sus hijos, alimentarlos, corregirlos, inculcarle valores y representarlos en el ejercicio de las acciones. 31 LPRA § 7242. La patria potestad implica la responsabilidad de ejercerla responsablemente de conformidad con la ley. 31 LPRA § 7251.

Por otra parte, el Estado posee un interés legítimo en ofrecerle a los ciudadanos la atención y cuidado que no puede proporcionarse ellos mismos. *Pueblo v. Santiago Torres,* 154 DPR 291, 313 (2001). Esto implica que los derechos derivados de la patria potestad están supeditados a la autoridad del estado a través de su poder de *parens patriae.* Como regla general, el estado debe abstenerse de intervenir en la esfera familiar. *Rexach v. Ramírez, supra,* pág. 146. No obstante, los derechos de los progenitores deben ceder cuando en su ejercicio se perjudica el interés óptimo del menor. *Torres Ojeda, Ex parte,* 118 DPR 469, 480 (1987). La intervención del gobierno se limita a aquellas circunstancias en las cuales existe un interés apremiante. *Troxel v. Granville, supra,* pág. 68. Le corresponde al gobierno demostrar que no existe un medio menos oneroso para lograr su objetivo. 31 LPRA § 7321. A esos efectos, el tribunal tiene la potestad de suspender o privar temporal o permanentemente a los progenitores de la patria potestad sobre sus hijos cuando estos no sean capaces de satisfacer sus necesidades. *Rexach v. Ramírez, supra,* pág. 147. El tribunal determinará caso a caso el alcance de dicha privación o suspensión. 31 LPRA § 7321. Al adjudicar controversias relacionadas con menores, los tribunales deben guiarse por el principio de asegurar los mejores intereses de los menores y su bienestar integral. *Rexach v. Ramírez, supra,* pág. 147; *Torres Ojeda, Ex parte, supra,* pág. 480; *Nudelman v. Ferrer Bolívar,* 107 DPR 495, 508 (1978).

El derecho de visita es el que inherentemente posee el progenitor para comunicarse y establecer vínculos con sus hijos. *Sterzinger v. Ramírez,* 116 DPR 762, 775 (1985). Con el fin de salvaguardar el bienestar del menor, el tribunal puede restringir o interrumpir las relaciones familiares en situaciones graves que lo justifiquen. 31 LPRA § 7331. El derecho de las relaciones abuelo filiales fue reconocido a través de la promulgación de la Ley Núm.

182-1997. Esta ley modificó el artículo 152A del anterior Código Civil. El artículo establecía que los progenitores no pueden impedir sin justa causa que los hijos se relacionen con sus abuelos. Asimismo, les reconocía legitimación activa a los abuelos para ser oídos ante el juez para que este último decidiera, tomando en consideración las circunstancias particulares de cada caso. 31 LPRA § 591A.[17]

Conviene destacar que el Tribunal Supremo de Estados Unidos, en *Troxel v. Granville*, expresó que los tribunales no pueden otorgar visitación de los abuelos sobre la objeción de los padres a menos que existan circunstancias excepcionales que justifiquen la intervención estatal. *Troxel v. Granville, supra*, pág. 87. Nuestro Tribunal Supremo tuvo la oportunidad de interpretar el artículo 152A del antiguo Código Civil tomando en consideración este pronunciamiento. Así pues, expresó que los tribunales deben darle una consideración especial a la decisión de los padres de rechazar las relaciones abuelo-filiales. *Rexach v. Ramírez, supra*, pág. 161. También, resaltó que no debe imponérseles a los padres la carga de probar que las relaciones solicitadas por los abuelos serán perjudiciales para el menor. *Id.*, pág. 161. Enfatizó que les corresponde a los abuelos solicitantes el peso de la prueba para demostrar que tienen la aptitud para relacionarse con sus nietos. *Id.*

Como es conocido, la aprobación del nuevo Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, derogó el contenido del Art. 152A. Conforme a lo anterior, la relación abuelo filial se rige por el Art. 619 del Código Civil vigente. 31 LPRA § 7332. Dicho artículo establece lo siguiente:

> *Corresponde a los progenitores que ejercen la patria potestad decidir con qué personas dentro o fuera del núcleo familiar se relaciona su hijo. Por ser un derecho fundamental, la determinación de los progenitores a estos efectos goza de una presunción de corrección.*

---

[17] Este artículo fue derogado por el Código Civil del 2020.

> *El tribunal solo puede interferir con el ejercicio de ese derecho cuando se demuestra la existencia de intereses apremiantes mediante prueba robusta, clara y convincente.*
>
> *Si el tribunal adjudica el derecho de visita, los progenitores determinarán la planificación del tiempo, el lugar y el modo de las relaciones autorizadas, siempre buscando el interés óptimo de los menores.*
>
> *A la hora de determinar el derecho de visita, el tribunal deberá tomar en consideración entre otras cosas, si esas relaciones familiares son importantes para el desarrollo integral del menor de edad, y si este ha estado bajo el cuidado temporal de otras personas.*

Cabe destacar que, hasta el momento, nuestro Tribunal Supremo no ha tenido la ocasión de dar una interpretación al nuevo artículo del Código Civil relacionado al derecho de visita de otros parientes, el cual incluye el de los abuelos. Existen discrepancias importantes entre ambos artículos. El Código Civil anterior requería que los progenitores mostraran justa causa para prohibir las relaciones abuelo filiales mientras que el nuevo Código Civil establece una presunción de corrección a favor de los progenitores al decidir con que personas los hijos menores de edad pueden relacionarse. 31 LPRA § 7332. Así pues, el estándar de prueba impuesto a los parientes es más alto. Les corresponde a los abuelos demostrar con prueba clara robusta y convincente que el derecho de visita contribuye al interés optimo y desarrollo integral del menor.

C. *Disposiciones Transitorias*

Nuestro Código Civil vigente provee algunos artículos que unifican la transición entre este y el Código Civil derogado de 1930. Estas disposiciones abordan la cuestión de determinar cuál ley debe aplicarse a acciones específicas utilizando los criterios provistos. El artículo 1808, expone lo siguiente:

> *Las acciones y los derechos nacidos y no ejercitados antes de la entrada en vigor de este Código, subsisten con la extensión y en los términos que le reconoce la legislación precedente; pero sujetándose, en cuanto a su ejercicio y procedimientos para hacerlos valer, a lo dispuesto en este Código. Si el ejercicio del derecho o de la acción se halla pendiente de procedimientos comenzados bajo la legislación anterior, y estos son diferentes de los establecidos en este*

*Código, pueden optar los interesados por unos o por otros. 31 L.P.R.A. § 11713.*

Por otro lado, el artículo 1817 expresa que los casos que no estén contemplados en las disposiciones previas serán resueltos aplicando los principios que les sirvan de fundamento. 31 LPRA § 11722.

**D.** *Apreciación de la Prueba*

Por lo general, un tribunal apelativo no debe interferir con las conclusiones de hecho ni en la valoración de la credibilidad realizada por el Juez del Tribunal de Primera Instancia. *Serrano Muñoz v. Aux. Mutuo*, 171 DPR 717, 741 (2007). Esto es, los foros apelativos deben mostrar deferencia y respeto hacia la apreciación de la prueba realizada por los foros inferiores. *McConnell Jiménez v. Palau*, 161 DPR 734, 737 (2004).

La razón subyacente de esta deferencia hacia el Tribunal de Primera Instancia radica en que el juez del foro primario tuvo la oportunidad de presenciar la totalidad de la evidencia presentada, lo que lo coloca en una posición más ventajosa que el tribunal de apelación para considerarla. *Sepúlveda v. Depto. de Salud*, 145 DPR 560, 573 (1998). El Tribunal Supremo de Puerto Rico ha establecido que, por lo general, es el juez del Tribunal de Primera Instancia quien se encuentra en una posición más favorable para valorar la evidencia testimonial presentada, dado que fue él quien presenció y escuchó a los testigos. *Argüello v. Argüello*, 155 DPR 62, 79 (2001). El juez sentenciador ante quien deponen los testigos es quien tiene la oportunidad de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su consciencia la convicción en cuanto a si dicen la verdad. *Id.*, pág. citando a J.A. Cuevas Segarra, *Tratado de Derecho Civil*. San Juan, Pubs. JTS, T. II, pág. 685 (2000).

Por consiguiente, el tribunal revisor no intervendrá con la apreciación de la prueba hecha por el juzgador de los hechos, salvo que exista error manifiesto, pasión, prejuicio o parcialidad. *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011). Esto se debe a que, de ordinario, "solo tenemos récords mudos e inexpresivos" ante nuestra consideración al ejercer nuestra función revisora. *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967, 987 (2010). Cuando el Tribunal de Primera Instancia realice una apreciación errónea de la prueba, su determinación estará sujeta a la facultad revisora de los foros apelativos. *Cárdenas Maxán v. Rodríguez Rodríguez*, 125 DPR 702, 712 (1990). Por lo tanto, los tribunales de apelaciones intervendrán cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico de toda la prueba presentada. *Méndez v. Morales*, *supra*, a la pág. 36 (1996).

**E. *Peritos***

Un perito es "una persona que, a través de la educación o experiencia, ha desarrollado un conocimiento o destreza sobre una materia de manera que puede formar una opinión que sirva de ayuda al juzgador". *S.L.G. Font Bardón v. Mini-Warehouse*, 179 DPR 322, 338 (2010), citando traducción de Black's Law Dictionary, 8va ed., Minnesota, Ed. Thomson West, 2004, pág. 619. Conforme a las Reglas de Evidencia, una persona puede testificar como perito "cuando [su] conocimiento científico, técnico o especializado sea de ayuda para la juzgadora o el juzgador poder entender la prueba o determinar un hecho en controversia". 32 LPRA Ap. VI, R. 702. Cónsono con ello, para calificar como experto, es necesario poseer "especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficiente… en el asunto sobre el cual habrá de prestar testimonio". Regla 703 de Evidencia, 32 LPRA Ap. VI, R. 703.

Una vez el perito haya sido calificado, las partes pueden presentar prueba sobre el valor probatorio de su testimonio, con el

propósito de impugnar o sostener su credibilidad. Véase, *Sucn. Pagán Berríos v. UPR y otros,* 206 DPR 317 (2021). En sintonía con lo anterior, el valor probatorio del testimonio va a depender de los siguientes criterios, a saber: (1) si el testimonio está fundamentado en hechos o información suficiente; (2) si el testimonio es el producto de principios y métodos confiables; (3) si la persona testigo aplicó los principios y métodos de manera confiable a los hechos del caso; (4) si el principio subyacente al testimonio ha sido aceptado generalmente en la comunidad científica; (5) las calificaciones o credenciales de la persona testigo, y (6) la parcialidad de la persona testigo. 32 LPRA Ap. VI, R. 702.

Por otro lado, "toda persona testigo que declare en calidad de perita podrá ser contrainterrogada siempre sobre sus calificaciones como perita, el asunto objeto de su opinión pericial y los fundamentos de su opinión". 32 LPRA Ap. VI, R. 707. Lo anterior es independiente de los medios de prueba para impugnar la credibilidad de testigos, establecidos en la Regla 608 de Evidencia, 32 LPRA Ap. VI.

III

En el presente caso, la Parte Peticionaria nos solicita que revoquemos la determinación del Tribunal de Primera Instancia en cuanto a la suspensión de las relaciones abuelo filiales.

Primeramente, los Apelantes señalan como error que el Tribunal de Primera Instancia aplicó de manera retroactiva las disposiciones del Código Civil de 2020. El caso ante nos tuvo su génesis en la presentación del Informe Social de la Trabajadora Social del Tribunal, la cual recomendó que no se llevaran a cabo las relaciones abuelo filiales. El Tribunal emitió la orden de realizar una discusión de caso el 19 de abril de 2022 y el informe fue presentado el 31 de mayo de 2022. Así pues, es a partir del 31 de mayo de 2022 que surge la controversia de autos. Por consecuente, el Código Civil

aplicable a los hechos de este caso es el vigente y el foro *a quo* no incidió.

Es importante destacar que, la presunción que respalda a los progenitores, según el artículo 619 del Código Civil actual, *supra,* es mayor al Código Civil anterior y el estándar de prueba aplicable es más exigente. No obstante, aunque el Código Civil derogado les exigía a los progenitores justa causa para prohibir las relaciones abuelo filiales, el desenlace de la controversia ante nos sería el mismo bajo cualquiera de las normativas.

Los errores A, D y E se discutirán en conjunto por encontrarse estrechamente relacionados. La Parte Peticionaria señala como errores el uso de criterios subjetivos y no sostenidos en la evidencia presentada, el no tomar en consideración que la menor pasó los primeros diez (10) años de su vida con sus abuelos paternos y el determinar que no se ofreció evidencia del beneficio de las relaciones abuelo filiales. No le asiste la razón. Surge del expediente del caso, que el Tribunal de Primera Instancia tuvo la oportunidad de entrevistar a la menor. Asimismo, la Trabajadora Social del Tribunal se reunió con la menor, con su terapeuta y con la psicóloga de su abuela. Por lo tanto, el Tribunal de Primera Instancia se basó en la prueba presentada, la cual consta en el expediente y no meramente en criterios subjetivos.

Cabe destacar que el juzgador del Foro Inferior tomó en consideración el hecho de que la menor convivió con sus abuelos por muchos años. Sin embargo, no fue el único factor que tomó en cuenta, pues, también evaluó si las relaciones abuelo filiales son importantes para el desarrollo integral de ésta. Luego de examinar la prueba, entendió que, por el momento, no existe un interés apremiante en fomentar dichas relaciones. Por lo tanto, prevalece la presunción de corrección de las determinaciones de los padres con patria potestad, en este caso su madre, conforme al Artículo 619 de

nuestro Código, *supra*. Por otro lado, el Foro Primario no les concedió mayor peso a las recomendaciones de la perito de la Parte Peticionaria, puesto que esta no entrevistó a la menor ni a la madre. Dado a que del expediente no surge error manifiesto, pasión, perjuicio o parcialidad, se concede entera deferencia al foro *a quo* en su apreciación de prueba y, en su consecuencia, las determinaciones de hechos respecto a esta materia.

Aclarados estos asuntos, procedemos a atender el próximo señalamiento de error. La Parte Peticionaria indica que el Foro Inferior erró al negar al abuelo de la menor, el Sr. Juan Rodríguez Espada, la relación abuelo filial, pese a que no se pasó prueba de que no se pudiera dar la misma y que la menor no hizo alegación negativa sobre él. Dicho argumento no es válido. A pesar de que la menor no realizó declaraciones desfavorables respecto a su abuelo, le correspondía a este demostrar al Tribunal mediante prueba robusta, clara y convincente que las relaciones abuelo filiales eran beneficiosas. De lo contrario, prevalece la presunción de corrección sobre las decisiones tomadas por la madre de la menor, conforme lo dispuesto en el Art. 619 del Código Civil, *supra*. Según constamos, del expediente no surge que el abuelo paterno haya demostrado que existen intereses apremiantes respecto a la relación de la menor JRCS con su abuelo de forma tal que amerite que el Tribunal intervenga. Le correspondía al abuelo ofrecer la evidencia necesaria para derrotar dicha presunción y este no lo hizo.

Por otra parte, los Apelantes señalan como errores el mantener como único profesional con contacto con la menor a la Dra. Gómez, sin tomar en consideración la solicitud del padre de la menor y al asumir alegadas posiciones del padre sin que se pasara prueba sobre ello. Según se desprende del expediente, el Sr. Rodríguez Prado, padre de la menor, solicitó que se establecieran las relaciones paternofiliales, pero luego desistió de la solicitud.

También, solicitó ser eximido de comparecer a la vista de impugnación de informe social, pues, aunque está de acuerdo con que su hija se relacione con sus abuelos, entiende que su presencia no era "visceral para el asunto" debido a que no era el que impugnó el informe. Así pues, el juzgador lo eximió de asistir a la vista. Es esencial subrayar que los abuelos paternos no poseen legitimación activa para instar acciones correspondientes al padre de la menor. Por lo tanto, procede disponer de estos argumentos.

Los Apelantes indican que el Foro Primario erró al no permitirles realizarle una evaluación a la menor por un tercero imparcial para demostrar la importancia de la relación abuelo filial y por cuestionar la opinión profesional de la perita, Dra. Venus Hernández, al no entrevistar a la menor. Surge del expediente que, la menor ha sido evaluada por la Dra. Gómez Soto, la Dra. María de Los Ángeles de Jesús y la trabajadora social de la Unidad Social del Tribunal, incluyendo a la Sra. Karim Rosado Raíces. La Trabajadora Social del Tribunal se considera una perita del tribunal y tercero imparcial a esta controversia. La abuela paterna recibió tratamiento psicológico por la Dra. Venus Hernández. Esta recomendó que las relaciones abuelo filiales se llevaran a cabo. No obstante, no le correspondía tomar dicha determinación. Su intervención debió limitarse a proveer su opinión respecto al estado mental de la abuela, no de la menor JCRS.

Por último, los abuelos paternos señalan como error el haber tomado en consideración la opinión de la menor. Del informe revisado por el Tribunal, surge que la menor tiene buenas notas, expresa sentirse feliz con su madre y, por el momento, no desea relacionarse con su abuela. Esta ha obtenido información en exceso acerca de los procedimientos judiciales, lo cual la ha afectado en gran medida. La menor llegó a la conclusión de que lo que le había dicho su abuela, acerca de su mamá, no era correcto. Asimismo, la

menor comentó que hubo actos de maltrato de parte de su abuela, pero no quiso abundar en ellos. Cónsono con lo anterior, la opinión de la menor de catorce (14) años tiene un valor significativo en las determinaciones de los aspectos principales de su vida, tal como con quien desea vivir y por qué, además de ser un componente integral para resolver cuál es el interés óptimo del menor. El Código Civil vigente concede el derecho a ser oído al menor en casos de emancipación igual que lo hizo la Ley 246-2011[18] en casos al amparo de la misma. Aunque, al presente, el Código Civil no brinda expresamente un derecho a ser escuchado al menor en casos de derecho de visita, la realidad es que tampoco la prohíbe. Entendemos que el Tribunal no se excedió de su discreción a tomar en consideración la opinión de la menor. De igual modo, la determinación de la madre con patria potestad, la Sra. Nicole M. Sánchez Cabán, prevaleció y reiteramos que esta goza de una presunción de corrección al palio de nuestro Código Civil y jurisprudencia, la cual no fue rebatida por los Apelantes.

El Tribunal de Primera Instancia determinó que no se demostró que las relaciones abuelo filiales benefician a la menor en este momento y concurrimos con su determinación. Dado a que del expediente no surge error manifiesto, pasión, perjuicio o parcialidad, se concede deferencia a las determinaciones de hechos del Tribunal de Primera Instancia.

IV

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, expedimos el auto de *certiorari* y confirmamos la *Resolución Enmendada* emitida por el Tribunal de Primera Instancia.

---

[18] Art. 44 de la Ley Para la Seguridad, Bienestar y Protección de Menores, Ley Núm. 246-2011, según enmendada, 8 LPRA § 1153. Aclaramos que la Ley Núm. 246-2011 fue derogada por la Ley Núm. 57-2023, 8 LPRA § 1641 et seq. No obstante, la Ley Núm. 246-2011 era la ley aplicable al momento de los hechos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones